**MONTOUR SCHOOL DISTRICT, Petitioner,**

v.

**S.T. and His Parents, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2002.

Decided July 22, 2002.

Reargument or Reargument En Banc Denied Sept. 13, 2002.

Patricia R. Andrews, Pittsburgh, for respondent.

Pamela E. Berger, Pittsburgh, for respondent.

Before PELLEGRINI, Judge, and COHN, Judge, and DOYLE, Senior Judge.

OPINION BY Senior Judge DOYLE.

Montour School District (District) petitions for review of an order of the Special Education Due Process Appeals Review Panel (Special Appeals Panel or Panel) that vacated in part and reversed in part a hearing officer's decision to deny the request of S.T.'s parents for a "due process" hearing on their claims against the District regarding the education provided to S.T., a minor student.

As indicated in the Panel's decision, S.T. is a sixteen-year-old autistic student in the District. He is eligible to receive special education and related services pursuant to the Individuals with Disabilities Education Act (Disabilities Education Act or Act), 20 U.S.C. §§ 1400–1490.

Section 1415 of the Act sets out the procedural rights to which students and parents are entitled in seeking to ensure that school districts comply with the provisions of the Act. At a minimum, the Act requires that states provide students and their parents with a due process hearing. 20 U.S.C. § 1415(f).[1] The Act also indicates that states may provide for an appeal to the state educational agency. 20 U.S.C. § 1415(g).[2] Moreover, Section 1415(i)(2) of the Act provides that, following such appellate review, an aggrieved party may seek additional review by **civil suit** brought either in a State Court of competent jurisdiction or in the appropriate Federal District Court.[3] Courts reviewing a decision under this provision may accept additional evidence upon the request of a party, and may grant relief based upon a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B).

The relevant state regulations in force at the time S.T.'s parents sought a due process hearing created a remedial system that provided students and their parents with the right to seek relief by requesting such a hearing.[4] The pertinent regulation was found at 22 Pa.Code § 14.64 and provided as follows:

1. Section 1415(f) of the Act provides as follows:

   **Impartial due process hearing. In general. Whenever a complaint has been received under subsection (b)(6) or (k) of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing**, which shall be conducted by a State educational agency or by the local educational agency, as determined by State law or by the State educational agency.
   20 U.S.C. § 1415(f) (emphasis added).

2. Section 1415(g) of the Act provides the following:

   **Appeal.** If the hearing required by subsection (f) of this section is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency. Such agency shall conduct an impartial review of such decision. The officer conducting such review shall make an independent decision upon completion of such review.
   20 U.S.C. § 1415(g).

3. In this regard, Section 1415(i)(1)(B) of the Act also provides as follows:

   Decision made at appeal. A decision made under subsection (g) shall be final; except that any party may bring an action under paragraph (2) of this subsection [affording a right to bring an action "in any State Court ... or in a district court of the United States."]
   20 U.S.C. § 1415(i)(1)(B).

4. By order of the State Board of Education, effective June 9, 2001, the Board rescinded these regulations, and adopted the regulation

(a) Parents may request an impartial due process hearing concerning the identification, evaluation or educational placement of, or the provisions of a free appropriate public education to, a student who is exceptional ... if the parents disagree with the school [district]....

. . . .

(e) The decision of the hearing officer shall include findings of fact, a discussion and conclusions of law. Although technical rules of evidence will not be followed, the decision shall be based solely upon the substantial evidence presented at the hearing.

. . . .

(f) The hearing officer shall have the authority to order that additional evidence be presented.

Following a due process hearing, parents or students aggrieved by a hearing officer's decision could seek review of that decision under 22 Pa.Code § 14.64(m), which provided:

The decision of the impartial hearing officer may be appealed to a panel of three appellate hearing officers. The panel's decision may be appealed further to a court of competent jurisdiction.[5] In notifying the parties of its decision, the panel shall indicate the courts to which an appeal may be taken.

(Footnote added).

As succinctly summarized by Judge James R. Kelley in *Kozak v. Hampton Township School District*, 655 A.2d 641, 643 (Pa.Cmwlth.), *petition for allowance of*

*appeal denied,* 542 Pa. 652, 666 A.2d 1060 (1995):

[t]he Individuals with Disabilities Education Act (IDEA), requires that for a state to receive federal assistance thereunder, it must provide a child with disabilities a "free appropriate public education" based on the unique needs of the student. 20 U.S.C. § 1412. The IDEA establishes minimum requirements for the education of children with disabilities. To implement those requirements, the Commonwealth, through the Department of Education (department), promulgated the Pennsylvania Special Education Regulations and the Pennsylvania Special Education Standards (state regulations). Under the state regulations, a school district must develop an IEP [Individualized Education Program] tailored in accordance with certain procedures for each child with a disability. 22 Pa.Code § 14.32.

(Footnotes omitted).

S.T.'s parents first expressed concern regarding S.T.'s education in a letter the District received on June 27, 2000, in which counsel for the parents requested a "prehearing" conference with the District during which S.T.'s parents wished to discuss problems they perceived with the education the District was providing for S.T. On July 13, 2000, the parents initiated a separate and distinct complaint with the Department of Education's Special Education Bureau of Compliance (Bureau). That particular subdivision of the Department is not responsible for conducting due process hearings under the Act, but, pur-

---

now found at 22 Pa.Code §§ 14.161 and 14.162, relating to, among other things, prehearing conferences, impartial due process hearings, and appeals from due process hearing officer's decisions.

**5.** This regulation appears to reflect the right to bring a civil action under 20 U.S.C.

§ 1415(i)(2). We note that this regulation refers to the action as an appeal; however, the action envisioned under Section 1415(i)(2) appears to contemplate an action more akin to an appeal *de novo*. Neither party has brought this question to the Court's attention.

suant to the parents' complaint request, the Bureau initiated an investigation. In an action unrelated to that proceeding, on August 1, 2000, representatives of the District and the parents met for a conference, in apparent response to the parents' letter of June 27, 2000. At that conference, the District and the parents purportedly came to a resolution of certain of the parents' complaints. On November 5, 2000, an advisor of the Bureau issued a Complaint Investigation Report (CIR), in response to the complaint the parents had filed with that office on July 13, 2000. The District appealed that Report to the Department of Education, which revised the adviser's Report and forwarded the revised Report to the parties on February 6, 2001. Neither party pursued additional review of that final Report.

However, by letter [6] dated January 17, 2001, the parents requested a "due process" hearing, in accordance with the above noted regulations. According to the decision of the Special Appeals Panel, the parents raised the following issues in their January 17th letter: (1) the District had not honored the agreements reached at the August 1, 2000, prehearing conference; (2) the District had not complied with the terms of the CIR; (3) S.T. is entitled to three years of compensatory education; (4) the District staff failed to follow correct safety procedures involving an incident in which gasoline spilled on S.T., and no measures were taken to address the incident or to discipline staff for their alleged breach of duty; (5) S.T.'s father should receive compensation for his driving services as well as mileage costs for transporting S.T. to and from school.

The Department of Education appointed a hearing officer who held a hearing on February 27, 2001. At that hearing, the District and S.T.'s parents moved to continue the hearing on the basis that S.T.'s IEP team had not finalized an IEP for S.T. by the day of the hearing. The hearing officer directed that the IEP should be finalized within thirty days, and issued a briefing schedule directing the parties to submit briefs on the "hearable" issues to be addressed at the due process hearing.

Additionally, at the February 27, 2001, hearing, the District requested the hearing officer to resolve, at that hearing, the question of whether it was within her authority to determine if S.T.'s father was entitled to compensation for the driving services he provided in transporting S.T. to and from school. Over the parents' objection, the hearing officer ruled at that hearing that the transportation issue was not within her jurisdiction. Following that hearing, counsel for S.T.'s parents indicated that another issue they wished to consider at the due process hearing concerned S.T.'s receipt of an extended school year for 2001.

The hearing officer, after receiving briefs, issued a decision on April 27, 2001, in which she characterized the issues before her as follows: (1) should issues occurring prior to January 17, 2000, one year before the date of the letter requesting a due process hearing,[7] be dismissed for failure to request a due process hearing in a timely manner; and (2) are the parents precluded from raising issues at the due process hearing previously raised through the Bureau of Special Education, Division

---

6. We note that, for reasons unknown, this letter is not listed or included with the original record.

7. This date is significant to the hearing officer's decision, because, as discussed later in

this opinion, one issue before the hearing officer was whether a statute of limitations is applicable in requests for compensatory education under the Disabilities Education Act.

of Compliance. As indicated above, the Bureau had issued a final CIR on February 6, 2001.

With regard to the first issue, the hearing officer, relying upon federal court decisions [8] involving the Disabilities Education Act, concluded that parties seeking remedies under the Act, including compensatory education, are required to pursue such remedies within a one-year period of accepting a student's IEP. Thus, the hearing officer concluded that S.T. and his parents could not pursue issues in a due process hearing, including compensatory education for the 1996 school year, or any alleged complaints that occurred before January 17, 2000, because they did not initiate their request for a due process hearing until January 17, 2001.

With regard to other issues S.T.'s parents raised in their request for a due process hearing, the hearing officer concluded that administrative *res judicata* precluded litigation of issues that purportedly were resolved either by settlement agreement at the August 1, 2000, prehearing conference or through the CIR process.

The parents, dissatisfied with the result of the hearing officer's decision, filed exceptions with the Special Appeals Panel, asserting that: (1) the hearing officer erred in applying the holdings of several federal court decisions relating to the issue of a limitation period for seeking compensatory education; (2) the hearing officer did not adequately analyze various aspects of the issues raised before her; (3) the hearing officer did not properly apply the doctrine of administrative *res judicata* to the issues presented to her; (4) the hearing officer erred in assuming that the par-

ties reached a settlement agreement at the prehearing conference; and (5) the hearing officer had no factual evidentiary basis upon which to determine that the District took the actions summarized in the memorandum she issued after the prehearing conference.

The Special Appeals Panel summarized the issues for its review as follows: (1) the applicable "statute" of limitations, (2) the compliance report and dispute, and (3) the prehearing conference.

With regard to the issue of a limitation period for seeking compensatory education, the Special Appeals Panel cited the decision of the United States Court of Appeals for the Third Circuit in *Ridgewood Board of Education v. N.E.*, 172 F.3d 238, 250 (3d Cir.1999), wherein that Court quoted *M.C. v. Central Regional School District*, 81 F.3d 389, 396 (3d Cir.), *cert. denied*, 519 U.S. 866, 117 S.Ct. 176, 136 L.Ed.2d 116 (1996), which concluded that "a child's entitlement to special education should not depend upon the vigilance of the parents." The Panel further stated:

the right to compensatory education accrues from the point that the school district knows or should know of the IEPs [sic] failure.... [T]he court in *Bernardsville* [*Board of Education v. J.H.*, 42 F.3d 149 (3d Cir.1994)] established that a statute of limitations and other equitable considerations were applicable when [the] filing of a prompt complaint would reduce or obviate expenses. We find that such a consideration is inapplicable to compensatory education because as we have repeatedly asserted, compensatory education

---

**8.** The reliance by the parties, hearing officer and Special Appeals Panel solely upon federal decisional law reflects the paucity of state decisional law regarding the issue of the statute of limitations and compensatory edu-

cation. Reflected in this fact is the unique nature of the Disabilities Education Act and the choice of federal or state forums under 20 U.S.C. § 1415(i)(2).

awards simply require the district to provide what it should have provided in the first place. Thus, the expense is precisely the expense that would have accrued had the district provided the required services at the time they knew or should have known they were required for a Free, Appropriate Public Education.

(Panel Opinion at 6).

The Panel then concluded that administrative *res judicata* did not apply in this case, noting that "federal law does not permit substituting the state complaint procedure for due process." (Panel Opinion at 7). Additionally, the Panel cited a memorandum issued by the Office of Special Education Programs,[9] which the Panel relied upon for the proposition that issues that are subject to the complaint process before the Bureau can also be the subject of a due process hearing pursuant to 20 U.S.C. § 1415(f)(1), and that the submission of a complaint does not preclude complainants from seeking a due process hearing. The Panel determined that S.T.'s parents had the right during a due process hearing to offer evidence in support of their argument that the issues they raised had not been resolved in the CIR—an opportunity the hearing officer failed to provide.

Finally, the Panel addressed the issue of the settlement agreement allegedly developed at the prehearing conference. The Panel concluded that the record was devoid of any document or proof that the parties had arrived at a settlement. Thus, the Panel directed that the parents could challenge the nature of the alleged settlement agreement as well as the District's alleged failure to comply with the agreement.

The Panel issued an order: (1) vacating and reversing [10] the hearing officer's order, and (2) allowing S.T.'s parents to obtain a due process hearing on their claims. The Panel, citing 22 Pa.Code § 14.64, then noted the parties' right to appeal to either this Court or the appropriate federal district court.

The District, aggrieved by the Panel's decision, filed an appeal [11] to this Court raising the following issues: (1) whether the Panel erred in concluding that no statute of limitations applies to a parent's request for compensatory education; (2) whether the Panel erred when it determined that administrative *res judicata* does not apply to issues raised at a special education due process hearing when those issues have been addressed through a Department of Education Division of Compliance complaint procedure; and (3) whether the Panel erred in concluding that the

---

**9.** This memorandum is not included in the record or briefs.

**10.** Although the Panel obviously disagreed with the decision of the due process hearing officer, the Panel's order does not clearly reflect which aspects of the hearing officer's decision were vacated and which were reversed.

**11.** The District filed a petition for review, raising issues of alleged legal error by the Special Appeals Panel. By order dated August 15, 2001, this Court struck S.T.'s answer to the petition for review, noting that the petition was addressed to this Court's appel-

late jurisdiction. We note that the District never specifically sought this Court's review of the Panel's decision under 20 U.S.C. § 1415(i)(2), which we here interpret as providing for an appeal *de novo*. Accordingly, we exercise here our normal standard of review, which, under the Administrative Agency Law, 2 Pa.C.S. §§ 701–704, in an appeal from a decision of a Special Appeals Panel, is limited to a determination of whether the adjudication is supported by substantial evidence, and whether errors of law were committed or constitutional rights were violated. *Punxsutawney Area School District v. Kanouff*, 663 A.2d 831 (Pa.Cmwlth.1995).

parents could raise issues at a due process hearing when those issues had already been resolved in an alleged settlement agreement.

## I. Time Limitations on Requests for Compensatory Education

■ Compensatory education, as its name suggests, is the provision for additional periods of actual education for a child who, under the Disabilities Education Act, has not received the free, appropriate public education to which he is entitled. Thus, when a student or his parents establish that a school district has failed in its responsibility to provide such an education, an eligible student, or his parents acting on his behalf, may seek compensatory school time, even beyond the age of twenty-one—the age at which school districts normally are no longer required to provide education to a student.

In *M.C.*, a Third Circuit Court of Appeals decision involving a New Jersey school district, the Court summarized the federal legal precedent for awarding compensatory education. That Court stated the following:

Federal courts began awarding compensatory education after the Supreme Court determined in *School Committee of Burlington v. Department of Education,* 471 U.S. 359, 370–71, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), that tuition reimbursement was appropriate under the Education of the Handicapped Act, 20 U.S.C. §§ 1401–1461 (1982) ( [the] predecessor [of the Disabilities Education Act] ). In a typical reimbursement scenario, a parent who believed that a child was not receiving an appropriate public education would place the child in private education at his or her own expense. Under *Burlington,* if a court later determined that the private placement was the appropriate one, the school district would have to reimburse

the parent.... Extending the *Burlington* decision, the Eighth Circuit in *Miener v. Missouri,* 800 F.2d 749, 754 (8th Cir.1986), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982), awarded compensatory education. The court reasoned that, like retroactive tuition reimbursement, compensatory education required school districts to " 'belatedly pay expenses that [they] should have paid all along.' " *Id.* at 753 (quoting *Burlington,* 471 U.S. at 370–71, 105 S.Ct. 1996, 85 L.Ed.2d 385). The court "was confident that Congress did not intend the child's entitlement to *free* education to turn upon her parent's ability to 'front' its costs." *Id.* In *Lester H.*[*v. Gilhool,* 916 F.2d 865, 872 (3d Cir.1990)], we adopted the position of the *Miener* Court and approved a compensatory remedy. 916 F.2d at 873.

81 F.3d at 395 (emphasis in original).

Two other decisions of the Third Circuit Court of Appeals provide the starting point for discussion regarding the statute of limitations that should apply to due process requests for compensatory education.

In *Bernardsville,* the Court of Appeals noted that, for years, the Bernardsville education system had failed to develop a suitable IEP for J.H., and had failed to intervene when J.H. began a trend of academic and social deterioration. The parents of J.H. removed him from the Bernardsville system and placed him with a private, out-of-state residential instructional provider, in which J.H. participated in an educational program designed to suit his needs, and which resulted in a significant improvement for J.H. J.H.'s parents sought reimbursement from the Bernardsville Board of Education for costs of this private program. As noted by the Court, neither the Act nor the federal regulations

speak to the right of parents to seek reimbursement. As framed by the Court, one of the questions that it had to decide was **"whether J.H.'s parents requested due process for their son within an appropriate time limitation."** 42 F.3d at 151 (emphasis added).

The Court, noting that federal regulations do not provide a specific time limitation within which to bring a due process request for reimbursement, concluded that its decision as to the time limitation to place on such requests must reflect the equitable considerations in the specific case. The Court concluded that parents could seek retroactive reimbursement for private tuition costs if a due process proceeding ultimately supports a parent's assertion that a child's IEP has not complied with the duty to provide a free, appropriate public education. The Court, however, limited that general rule by noting that, "where proceedings were initiated more than two years after J.H.'s transfer, we must place into our equation the practical opportunity afforded the school district to modify its IEP or to determine definitively whether expenditures occurred [*sic*] outside the district could have been obviated by the filing of a prompt complaint." *Id.* at 157.

In considering the equities involved in the case, the *Bernardsville* Court stated that:

the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought. We think more than two years, indeed, more than one year, without mitigating excuse, is an unreasonable delay. *Id.* at 158.

The decision upon which S.H.'s parents primarily rely is *Ridgewood.* In that case,

referred to earlier, the Third Circuit Court of Appeals reversed a District Court decision regarding the standard imposed upon school districts to provide a free, appropriate public education to disabled children. The Court of Appeals held that school systems, in order to satisfy the requirements of the Disabilities Education Act, need to provide more than a trivial education benefit to disabled children. Rather, in order to satisfy the Act, public school systems must provide significant learning and a meaningful benefit, gauged in respect to a particular child's potential. *See also Polk v. Central Susquehanna Intermediate Unit 16,* 853 F.2d 171 (3d Cir. 1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

The *Ridgewood* Court addressed the school district's complaint, which had sought review of an Administrative Law Judge's decision to grant the parents' request for reimbursement of tuition costs at a private educational facility where they had enrolled their child, after continued years of frustration with the IEP process at the school district. The parents in that case filed a counterclaim seeking, in part, compensatory education for their child.

The Court described the development in the case law with regard to the right to compensatory education, and stated that the "failure [of the parents] to object to N.E.'s placement does not deprive him of the right to an appropriate education. In *M.C.,* we held that 'a child's entitlement to special education should not depend upon the vigilance of the parents.'" *Ridgewood,* 172 F.3d at 250 (quoting *M.C.,* 81 F.3d at 396). The *Ridgewood* Court rejected the school district's argument that a statute of limitations precluded litigation, as well as the district's reliance upon *Jeremy H. v. Mount Lebanon School District,* 95 F.3d 272, 280 n. 15 (3d Cir.1996), noting

that, in *Jeremy H.*, it had concluded that the limitation period had only began to run once the state administrative process had run its course.

However, *Ridgewood's* statute of limitations discussion has no application here because the limitation issue in that case involved not the question of the time frame within which a parent or student must seek a due process hearing, but rather the time within which he or she may file a civil suit in a Federal or State Court under the civil action provision of the Act, 20 U.S.C. § 1415(i)(2), or in a Federal Court under other federal laws such as the Rehabilitation Act of 1973, 29 U.S.C. §§ 720, 794, or 42 U.S.C. § 1983.

In fact, language from the Court of Appeals decision in *Jeremy H.* provides insight into what statute of limitation applies in cases where students or parents seek compensatory education through the state due process procedure.

In *Jeremy H.*, the child's parents had filed a civil action based on several federal laws: the Disabilities Education Act, the Americans with Disabilities Act, 42 U.S.C. 12101, the Rehabilitation Act of 1973, and 42 U.S.C. § 1983. Jeremy H., who had been diagnosed with a vision disorder, started kindergarten in 1982. The vision disorder rendered reading, especially for long periods of time, difficult and created orientation and mobility problems. Sometime during his next year in school, the Mount Lebanon School District determined that Jeremy was eligible to receive special education services. The district provided Jeremy with various services for the next six years based upon annual evaluations and concomitant IEPs. His parents averred that the services provided to Jeremy failed adequately to accommodate his disability. In 1989, when Jeremy was about to begin junior high school, his parents removed him from the school district

and placed him in private school where his education was more suited to his specific needs. In late 1990 and early 1991, after his parents continued to press the school district for a more appropriate education, the school district prepared another IEP, but did not allow Jeremy's parents to participate in that process. Jeremy's parents, dissatisfied with the evaluation team that produced the IEP, and with the IEP itself, sought a due process hearing under 22 Pa.Code § 14.64. Both parties appealed various aspects of the hearing officer's findings and conclusions to the Special Appeals Panel. The Panel confirmed the hearing officer's conclusion that the school district had not provided Jeremy with a free, appropriate public education and also confirmed her direction that the district provide him with compensatory education for a period of two years, to consist of special sessions during the school year and a four-week summer program.

However, despite the Panel's decision, the school district failed to comply with many aspects of the Panel's order. During the 1993–94 school year, Jeremy moved with his father to Ohio and enrolled in the Ohio State School for the Blind, but Jeremy and his father returned to Pennsylvania in the summer of 1994. In November of that year, Jeremy and his parents filed their civil action in federal court, through which they sought, in part, compensatory education for Jeremy.

The school district raised various affirmative defenses in that litigation in the Federal District Court, including a statute of limitations defense. The District Court agreed with the school district's statute of limitations argument, and other arguments the school district raised, and dismissed the complaint. Specifically, the District Court concluded that a two-year limitation period should apply to claims brought under the Act and, therefore, because Jere-

my's parents had filed their complaint on November 17, 1994, they could not recover for alleged violations of the Act which occurred before November 17, 1992. The Court of Appeals disagreed, not with the District Court's conclusion that a two-year statute of limitations was appropriate, but, rather, with how the limitation period should be applied. The Court of Appeals noted that the Act requires a party to exhaust his or her state administrative remedies before filing a civil suit, which, in Jeremy's case, took approximately eighteen months. The Court noted that the combination of a limitation period with the period required for exhaustion would almost always result in the deprivation of access to the relief otherwise granted under the Disabilities Education Act.

The Court, in seeking to determine how to apply the statute of limitations, stated:

There would appear to be two principal alternatives: (1) that the period begins when the acts complained of occur (and is tolled while exhaustion occurs), and (2) that the period begins once the state administrative process has run its course. The first approach has many flaws; for instance, it requires a complex tolling analysis, and allows different plaintiffs widely varying (and perhaps difficult-to-ascertain) periods in which they may bring suit. It might therefore interfere with the statutory policy—cited by *Tokarcik* [*v. Forest Hills School District*, 665 F.2d 443 (3d Cir.1981)] in declining to apply a thirty-day limitations period—of allowing parents ample time to work together with school authorities in evaluating and implementing administrative decisions, and then, if necessary, to prepare an appeal. *See*

*Tokarcik*, 665 F.2d at 451–53 (1981).[16] Accordingly, we find that the second approach is preferable, that the limitations period for the initiation of the present action therefore only began to run once the appellate panel issued its decision, on May 21, 1993, and that all of the Hunters' claims now before this court were therefore timely brought.

[16] **The first approach would also sit most uneasily with *Bernardsville Board of Education v. J.H.*, 42 F.3d 149 (3d Cir.1994), in which this court found that parents' initiation of the state administrative process is governed by an equitable standard, which requires that the parents invoke their administrative remedies within a reasonable time after the events complained of occur.** *See id.* at 157.

*Jeremy H.*, 95 F.3d at 280–81 (emphasis added).

Thus, this Court recognizes the distinction that the Court of Appeals has found between the statute of limitations applicable in cases involving requests for a due process hearing and the statute of limitations involving the filing of a civil suit under 20 U.S.C. § 1415(i)(2), which follows the exhaustion of the state due process hearing procedures. In the former case, under *Bernardsville*, the Third Circuit has held that a one-to-two year statute of limitations is applicable.

▮ Although federal case law is generally not binding on state courts, it is, in this instance, persuasive.[12] Accordingly, this Court agrees with the District that *some* limitation period is applicable to the present case. Contrary to the Panel's de-

---

12. And, in this particular area, which, unusually, pairs the state administrative remedial process with a choice of state or federal forums for civil actions following the exhaus-

tion of the administrative process, the acceptance of the Court of Appeals' approach seems most prudent.

cision, which deemed *Ridgewood* applicable, we hold that the limitation period set forth in *Bernardsville* is applicable—generally, initiation of a request for a due process hearing must occur within one year, or two years at the outside (if the mitigating circumstances show that the equities in the case warrant such a delay), of the date upon which a parent accepts a proposed IEP. The equities in each case are determinative, but, unfortunately, in this case, we have no factual record from which to make such a determination regarding the period of time to apply.

■ Therefore, we reverse the Panel's legal conclusion regarding the statute of limitations, noting that, because S.T.'s parents did not request a due process hearing until January 17, 2001, the one-year statute of limitations herein adopted would seem to preclude an award of compensatory education for any period before January 17, 2000, unless S.T.'s parents offer some mitigating circumstances that excuse the delay, in which case, deficiencies in S.T.'s education that occurred during a period of up to two years before their request may be considered, if such mitigating circumstances excuse the delay. In accordance with our conclusions regarding the applicable statute of limitations, S.T.'s parents could challenge any IEP they signed within the one or two-year period before they sought the due process hearing, depending, again, upon whether any mitigating circumstances are presented and accepted.

## II. Administrative *Res Judicata*

■ The District argues that the Appeals Panel erred in concluding that *res judicata* did not preclude S.T.'s parents from litigating issues or claims that had been addressed by the Bureau's complaint investigation process in the CIR. *Res judicata* or claim preclusion "generally applies when the cause of action in one proceeding is identical with that involved in a prior judgment." *Knox v. Pennsylvania Board of Probation & Parole*, 138 Pa.Cmwlth. 344, 588 A.2d 79, 81 (1991) (emphasis added). In *Knox*, this Court noted that the doctrine of *res judicata* applies to administrative agency decisions as well as to traditional judicial tribunals. *Id.* A party seeking to preclude relitigation of a claim must establish the existence of four conditions: "1) identity of the thing sued upon; 2) identity of the cause of action; 3) identity of the persons or parties to the action; and 4) identity of the quality or capacity of the parties suing or sued." *Id.* at 82.

In *Lafayette Trust Bank v. Department of Banking*, 13 Pa.Cmwlth. 111, 318 A.2d 396 (1974), this Court considered an appeal of an adjudication by the Department of Banking that had approved an application of a bank to open a branch office. The bank had filed an initial application, which the Department denied, **without holding a hearing.** The bank filed a second application, and three parties objected to the application. However, following hearings on the matter, the Department approved the second application. The objecting appellants argued on appeal that the Department was barred from approving the second application by virtue of *res judicata.* This Court concluded that the objectors' reliance on that doctrine was misplaced, holding that, at best, *res judicata* could apply only if a hearing had been held with regard to the first application, and, in the hearings on the second application, no evidence had been offered that a change of circumstances had occurred. *See also First Bellefonte Bank & Trust Co. v. Myers*, 410 Pa. 298, 188 A.2d 726 (1963).

The federal courts have addressed the doctrine of administrative *res judicata* in a similar fashion. As noted by the Court of Appeals for the Second Circuit in *Delama-*

*ter v. Schweiker,* 721 F.2d 50, 53 (2d Cir. 1983):

> The concept of administrative res judicata was first given express sanction by the Supreme Court in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642.... There the Court observed that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."

■ In applying the doctrine as described in the above decisions, the proceeding that the District proffers as the basis for application of administrative *res judicata,* in this case the CIR procedure, would be required to be judicial in nature to have preclusive effect. Based on the record before this Court, the procedure that produced the CIR here can in no way be compared to a judicial proceeding. The CIR was not the product of a hearing wherein the parties produced evidence upon which a hearing officer rendered credibility determinations. Instead, a review of the CIR indicates that the person who developed the CIR is referred to as an "advisor." The CIR also indicates that the advisor developed the CIR based on conversations with the complainant, interviews with various professionals, and reviews of various documents. The CIR process is simply not the adversarial-type proceeding of a **fair** hearing that the doctrine of *res judicata* contemplates. Accordingly, we hold that the Special Appeals Panel did not err in reversing the hearing officer with regard to her application of *res judicata.*

### III. The Alleged Settlement Agreement

The District argues that three of the issues the parents raised in their due process request were settled by agreement at the prehearing conference held on August 1, 2000. The District alleges that, at the prehearing conference, (1) the District agreed to provide Greg Zak [13] to assist S.T.'s IEP team, (2) the parties agreed to revise S.T.'s IEP relative to transition, community based instruction and adaptive physical education, and (3) the parties agreed that the Pathfinder School [14] staff would receive in-service training on behavior management issues. However, there is no indication in the record regarding any such agreement. This Court simply has no basis upon which to review this challenge to the decision of the Special Appeals Panel.[15] Because there is no factual or evidentiary basis upon which to consider this issue, we are not able to address it.

Accordingly, in summary, the decision of the Special Appeals Panel is hereby affirmed with regard to the issues of admin-

---

13. According to the letter that counsel for S.T. and his parents sent to the District on June 27, 2000, Greg Zak is a consultant working for D.T. Watson Educational Services, who would help review S.T.'s needs and his IEP.

14. The Pathfinder School, an Allegheny Intermediate Unit Special Education Center, is the school S.T. attends, which provides him with full-time autistic support services.

15. The District, pointing to the civil suit provision of the Act, 20 U.S.C. § 1415(i)(2), dis-

cussed above, asserts that this Court can order the admission into the record of materials that would support its contention, and then review the record using the preponderance of the evidence standard described in that section of the Act. However, the District never specifically requested this Court to take action under this particular section. Rather, the District's jurisdictional statement refers to this Court's typical appellate review powers under the Administrative Agency Law.

istrative *res judicata* and the lack of an alleged agreement at the prehearing conference on August 1, 2000. However, we reverse the Panel's legal conclusion regarding the statute of limitation, in accordance with the Third Circuit Court of Appeals' decision in *Bernardsville*. We therefore will remand this matter to the Department of Education's Special Appeals Panel, which is directed to remand this matter to a hearing officer who shall conduct a due process hearing, in accordance with the holding of this opinion.[16]

## ORDER

AND NOW, this *22nd* day of *July*, 2002, the order of the Special Education Due Process Appeals Review Panel is reversed with regard to its determination that no statute of limitations applies to claims made in a request for a due process hearing. A one-year statute of limitations applies unless mitigating circumstances warrant the delay, in which case a delay of up to two years is acceptable, depending upon the particular circumstances. The Panel's order is affirmed as to the issues of the alleged agreement between S.T.'s parents and the district and the application of administrative *res judicata* to the claims S.T. and his parents have made in their request for a due process hearing. This matter is remanded to the Department of Education's Special Education Due Process Appeals Panel, which is directed to remand the matter to a hearing officer, who shall provide S.T. and his parents with a full due process hearing on the merits, in

accordance with the attached written opinion.

Jurisdiction relinquished.

---

**16.** In *Punxsutawney,* this Court noted that Pennsylvania's implementation of the [Disabilities Education Act] makes the Appeals Panel the ultimate fact-finder. The Appeals Panel is not bound by the decision of the hearing examiner, and its scope of review is not restricted to determining if there is substantial evidence to support the hearing examiner's findings. Rather, it is

charged with making an independent examination of the evidence of record, subject to review by this Court.
663 A.2d at 835 (footnote omitted). Because the hearing examiner in this case took no evidence, and conducted no hearing, it is appropriate to direct the Special Appeals Panel to remand to a hearing officer.