539 A.2d 785

**CENTENNIAL SCHOOL DISTRICT, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION and Robert C. Wilburn, Secretary of Education, Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 7, 1987.

Decided March 22, 1988.

John Philip Diefenderfer, Newtown, for appellant.

Michael I. Levin, Harrisburg, for amicus—Pennsylvania School Bds. Assoc.

Caryl Oberman, Philadelphia, for amicus—Pennsylvania Assoc. for Gifted Educ.

John A. Alzamora, Mary Beth O'Hara Osborne, Harrisburg, for Department of Educ.

Thomas E. Coval, Willow Grove, David M. Donaldson, Deputy Atty. Gen., Andrew S. Gordon, Chief, Deputy Atty. Gen., for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue in this case is whether the Public School Code and regulations promulgated by the Department of Education require school districts to provide an individualized program of education for mentally gifted students, or whether school districts may lawfully elect to provide only generalized education programs for such students.

In 1981 Centennial School District (the school district) devised an individualized education program (IEP) for an exceptional student, Terry Auspitz, which recommended that Terry be included in the district's program for mentally gifted students. This program (an "enrichment" program) added certain materials to the regular curriculum, but did not attempt to provide accelerated instruction in particular academic areas. Terry's parents agreed that their son should participate in the enrichment program, but they asserted that the enrichment program was insufficient to address Terry's need for accelerated instruction in reading and mathematics. Because the parents and the school district could not agree on the IEP, the parents requested a due process hearing as provided for in 22 Pa. Code § 13.32.

The hearing officer concluded that Terry was a mentally gifted student whose academic abilities were advanced beyond his chronological age and that Terry required placement in an age-appropriate setting because his social and emotional development were not advanced beyond that typical of his chronological age. Further, he determined that Terry should be given specialized instruction in mathematics and reading in addition to inclusion in the "enrichment" program provided by the district. The hearing officer wrote:

Within the Commonwealth of Pennsylvania, mentally gifted students are considered to be educationally exceptional and therefore entitled to an individually prescribed educational program appropriate to their unique educational needs. The fact that most school districts meet this obligation by providing a part-time program of educational enrichment does not mean that such programming is appropriate for all mentally gifted students. In order to provide an appropriate program for an individual student, that student's IEP must be developed based on *his* current educational levels and needs regardless of administrative considerations. Further, unlike other educationally exceptional students, mentally gifted students may receive their education within the regular and/or special education programs of the school; this determination is to be based on the student's individual needs and IEP as well.

In the case of Terry, his current educational program is neither appropriate nor adequate in terms of his intellectual potential and levels of academic achievement reflected by considerable evaluation. His inconsistent classroom performance and distracting behaviors can be viewed as indications of boredom and cries for attention from a child whose intellectual development has far exceeded his emotional social [sic] development. In meeting his educational needs, this imbalance must be remembered. Therefore, as much of his educational program as possible should be provided in age-appropriate normalized settings. Although this will undoubtedly present admin-

istrative and instructional difficulties and challenges to the school staff, it is consistent with both Terry's needs and the legal mandate for education within the least restrictive environment.

On March 2, 1983, the school district filed exceptions to the hearing officer's decision with the Secretary of Education. In affirming the hearing officer, the Secretary wrote:

Simply because PDE has approved the district's program of enrichment for gifted students does not relieve the district of its duty under 24 P.S. § 13–1371, § 13–1372, 22 Pa.Code § 13.31, § 341.1, and § 341.15, to provide Terry with an appropriate academic education. Furthermore, the fact that PDE approves a district's special education program does not mean that the program is necessarily appropriate for all students within a particular exceptionality or that individual modifications may not be necessary to meet individual needs....

A regular program with special instruction in accordance with a child's IEP specifying enrichment could be appropriate for certain exceptional children, however, such a gifted enrichment program without advanced instruction in reading and math is not appropriate for Terry. *See In re the Educational assignment of Eric L.,* Special Education Opinion # 119 (1978). Moreover, the district is specifically responsible for developing educational programs appropriate for the needs of *each* child, not of all children generally. *Shanberg v. Comm. Secretary of Ed.,* 57 Pa.Comwlth.Ct. 384, 426 A.2d 232, 233 (1981).

Secretary's Opinion at 10. The school district appealed this order to Commonwealth Court, which on January 31, 1986, affirmed the decision of the Secretary. Commonwealth Court stated that each school district is required to identify exceptional children and to develop an appropriate program of education suited to each child's individual needs. The court also observed that the Secretary of Education is responsible for determining what educational program is

suited for each individual child. 94 Pa.Comwlth.Ct. 530, 537, 503 A.2d 1090, 1094 (1986). The court added:

> As for whether the IEP prescribed by the Secretary is in accordance with the law, we note that 22 Pa.Code § 341.15, which sets forth the elements of an IEP, requires that the IEP include a statement of the specific educational services that are to be provided to the child, including a "description of all special education and related services required to meet the unique needs of the child...." Moreover, 22 Pa.Code § 13.22 specifies that "[c]urricula for gifted and talented school-aged persons shall be conducted in accordance with standards established by the Secretary and shall include provisions for ... (3) Amount of supervision and special teaching, determined by the type and degree of mental abilities or talents." In approving an IEP for Terry, the Secretary acted in accordance with the above regulations and with the underlying requirement that exceptional children be given an appropriate education, designed to address their individual needs.

*Id.* at 538, 503 A.2d at 1095.

We granted allocatur to determine whether the Secretary and Commonwealth Court exceeded the mandate of the Public School Code in requiring the school district to provide a gifted student with an individualized program of instruction which goes beyond that provided by the district's "enrichment" program.

 The School Code defines "exceptional children" as follows:

> (1) The term "exceptional children" shall mean children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational facilities or services and shall include all children in detention homes.

24 P.S. § 13–1371(1). In 1973, the State Board of Education published its first proposed regulations on the subject of special education. Citing section 13–1371, the proposed regulation states:

The provisions of this Chapter shall provide for the comprehensive education and special training necessary for pupils who are:

(1) mentally impaired;

(2) physically impaired; or

(3) *gifted and talented.*

22 Pa.Code § 13.3, 3 Pa. Bulletin 1473 (1973). (Emphasis added).[1] Four years later, the General Assembly, *which had theretofore made no reference to "gifted" students in the School Code,* amended Section 13–1372(3) of the School Code to include the following language:

[T]he institution of special classes and programs at the secondary level for *exceptional children who are gifted and talented students* may be deferred until September 1978.

(Emphasis added.) The expressed and clear import of this new language is that by 1977, both the General Assembly and the Department of Education included gifted children within the meaning of "exceptional" children.

In general, the School Code requires special treatment for exceptional students:

(1) **Standards for Proper Education and Training of Exceptional Children.** The State Board of Education *shall adopt and prescribe standards and regulations* for the *proper education and training of all exceptional children* by school districts or counties singly or jointly....

(2) **Plans for Education and Training Exceptional Children.** Each intermediate unit, cooperatively with other intermediate units and with school districts shall prepare and submit to the Superintendent of Public Instruction, on or before the first day of August ... for his approval or disapproval, *plans for the proper education and training of all exceptional children in accordance*

---

1. This section was not finally adopted by the State Board of Education, but the Board did adopt Section 13.1, 5 Pa. Bulletin 1542 (1975), which defines "exceptional persons" as "gifted and talented school-aged persons." This provision may be found currently at 22 Pa.Code § 13.1.

*with the standards and regulations adopted by the State Board of Education.* Plans as provided for in this section shall be subject to revision from time to time as conditions warrant, subject to the approval of the Superintendent of Public Instruction.

24 P.S. § 13–1372(1, 2). (Emphasis added.) [2]

In sum, Section 13–1372 requires that the State Board of Education promulgate standards and regulations for the education of all exceptional children, and that each intermediate unit and each school district within those units cooperate to prepare a plan for the education of all exceptional children, subject to the approval of the Superintendent of Public Instruction. In response to this statutory mandate, the State Board of Education has prescribed the following pertinent definitions and regulations:

**22 [Pa.Code] § 341.1. Definitions.**

(iv) *Mentally gifted.*—Outstanding intellectual and creative ability the development of which requires special activities or services not ordinarily provided in the regular program. Persons shall be assigned to a program for the gifted when they have an IQ of 130 or higher. A limited number of persons with IQ scores lower than 130 may be admitted to gifted programs when other educational criteria in the profile of the person strongly indicate gifted ability.

**22 [Pa.Code] § 341.15. Individualized Education Program.**

The Individualized Education Program for each person assigned to special education programs or services shall include:

(1) A statement of the present level of educational performance of the person.

(2) A statement of annual goals which describes the expected behaviors to be achieved through the implemen-

---

**2.** The superintendent of every school district is required to identify "every exceptional child" within his district and report that information to the proper intermediate unit. 24 P.S. § 13–1371(2).

tation of the Individualized Education Program of the person.

(3) A statement of short-term instructional objectives.

(4) A statement of specific educational services to be provided to the child, including a description of special education and related services required to meet the unique needs of the child, a special instructional media and materials to be provided, and the type of physical education program in which the child will participate.

(5) A description of the extent to which the child will be able to participate in regular education programs.

(6) The projected date for initiation and the anticipated duration of services.

(7) Appropriate objective criteria, evaluation procedures and schedules for determining, on at least an annual basis, whether the instructional objectives are being achieved.

**[22 Pa.Code] § 13.1. Definitions.**

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

\* \* \* \* \* \*

*Appropriate program*—A program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education.

*Exceptional persons*—*Persons of school-age who deviate from the average in physical,* mental, emotional or social characteristics to such an extent that they require special educational programs, facilities or services and shall include school-aged persons in detention homes and State schools and hospitals.

(i) .... ·

(ii) *Gifted and talented school-aged persons*—Those who, in accordance with criteria prescribed in standards developed by the Secretary of Education, have out-

standing intellectual or creative ability, the development of which requires special activities or services not ordinarily provided to regular children by local educational agencies.

* * * * * *

*Special education*—A basic education program adjusted to meet the educational needs of exceptional persons.

These regulatory provisions can be fairly summarized as requiring that mentally gifted students be provided with a plan of individualized instruction (an "appropriate program") designed to meet "the unique needs of the child."

At the root of this case is the school district's concern about costs. The district asks whether it is required to become a Harvard or a Princeton for those who have IQ's over 130, and the School Boards Association, arguing as amicus curiae, asserts that a "subjective standard" will lead to "bankruptcy of the public school system." Both the district and the association assert that what is required of school districts is only that they provide an approved program for exceptional children which "to some degree" addresses the needs of exceptional children. They argue that the district's "enrichment" program, which has been approved by the Secretary, is all they are required to provide. The "enrichment" program, which consists of materials added to the regular curriculum available to exceptional students, augments the regular curriculum, but does not attempt to address the needs of individual students.

Our response to these claims need go no further than reference to the Public School Code and the regulations. It is plain that section 13–1372(1) of the Code requires that the State Board of Education "adopt and prescribe standards and regulations for the proper education ... of all exceptional children," and it is equally plain that section 13–1372(2) requires the school districts to participate in the planning of educational programs for these children, *in accordance with the Superintendent's standards and regulations* and subject to his approval. See 24 P.S. § 13–1372(2), supra. It is also abundantly clear that the State

Board has promulgated standards and regulations which require the production of an individualized education program for each exceptional child, including "gifted and talented" children, as defined by the General Assembly. 22 Pa.Code § 341.15, supra.

In light of this, the district's claim that individualized planning and education for gifted exceptional children is not required is unfounded. The district's related claim that its section 13–1372(2) approved plan, which consists of "enrichment" of the regular curriculum, is all that it is required to do with respect to gifted students, is equally unfounded. The General Assembly has authorized the State Board of Education to define and regulate special education for exceptional children in Pennsylvania. This the State Board has done, and it has done it in such a way as to require *individualized,* as well as group planning and education of exceptional children. The district is correct in recognizing that it is required to formulate a plan pursuant to section 13–1372(2) to educate exceptional youngsters, that this plan must be approved by the Secretary, and that the plan may be general in nature, as is the district's "enrichment" program. But it does not follow from the school district's completion of this threshold requirement that it is excused from completing the other requirements found in the regulations concerning exceptional children.

Among these other requirements are that the school district identify all children who may be in need of special education programs or services, 22 Pa.Code § 341.12; that the district evaluate such students, *id.* § 341.13; that the district prepare an individualized education program for each child assigned to the special education program, *id.* at 341.15; that the district conduct a conference with the parent concerning the IEP, *id.* § 341.16; that the IEP be developed jointly by parents and school personnel, and if parents disagree with the program, they may request a hearing before a hearing officer, who will issue an opinion and order defining the assignment, program and services to be provided the child. *Id.* at § 341.18, § 13.1.

Since the State Board of Education has been mandated to promulgate regulations concerning the "proper education and training of all exceptional children," and since these regulations have been duly promulgated and instruct the school districts as indicated above, it is difficult to understand the school district's claim that the districts are required to do no more than provide the generalized "enrichment" programs mentioned earlier.

It is true that the School Code itself does not identify individualized education programs and does not speak, as do the regulations, of the unique needs of each exceptional child. That is to be expected, for when the General Assembly delegated to the State Board of Education the duty of providing the details of "proper education and training of all exceptional children," 24 P.S. § 13–1372(1), it had no need to be more specific.

The district argues, however, that even if the State Board is empowered to promulgate regulations, these particular regulations exceed its authority. This argument also is without merit. The General Assembly required the State Board to promulgate regulations concerning the proper education and training of exceptional children. That is exactly what these regulations treat, and they are not, therefore, beyond the authority granted by the General Assembly.

Finally, with respect to cost, we not only sympathize, but agree with the district and the Pennsylvania School Boards Association that the district's responsibility *is not without limits*. The instruction to be offered need not "maximize" the student's ability to benefit from an individualized program. However, the idea that the school district's obligation is limited is not new and does not compel the district's conclusions in this case. In *Scott S. v. Department of Education*, 99 Pa.Comwlth.Ct. 57, 512 A.2d 790 (1986), limits were set on the amount of individualized mathematics instruction which a school district could be required to provide to a gifted student. After observing that a senior high curriculum must offer three years of

mathematics acceptable for college admission, that it *may* offer advanced placement courses, and *may* allow part-time college enrollment, the Secretary wrote:

Although gifted exceptional students are entitled to a program of special education which will address the student's individual needs, the district's responsibility to provide such is not without bounds.... Accordingly, Scott is entitled to a basic education program adjusted to meet his needs. The curriculum of this program is to be adapted from the regular basic education curriculum. In this regard, the district witnesses testified on the hearing record that Scott had exhausted the district's curricular offerings in mathematics.... In other words, we may assume that Scott has exhausted the district's curricular mathematics offerings in both regular and special education and has completed the mathematics courses required for graduation. Yet, Scott's parents wish him to be provided with more.

We can find neither legal nor factual basis for this. The district has addressed Scott's giftedness, specifically in the area of mathematics for several years. This has been accomplished by accelerating Scott to higher level classes or by providing independent study.... In this manner the district addressed Scott's individual needs for mathematics instruction. However, to provide Scott with yet another mathematics course at this point in time *would go beyond adaptation of the district's legally required mathematics curriculum* and ... constitute provision of more than an appropriate program of special education to Scott.

*In Re the Educational Placement of Scott S.* (Special Education Opinion No. 250), p. 5, aff'd *Scott S. v. Dept. of Education,* 99 Comwlth Ct. 57, 512 A.2d 790 (1986).

■ The rule which we extrapolate and endorse from this well-reasoned opinion of the Secretary is that a school district may not be required to become a Harvard or a Princeton to all who have IQ's over 130. We agree that "gifted" students are entitled to special programs as a

group to bring their talents to as complete a fruition as our facilities allow. We do not, however, construe the legislation as authorizing individual tutors or exclusive individual programs outside or beyond the district's existing, regular and special education curricular offerings.

Because we can find no legal basis to determine that the Secretary has exceeded his authority in promulgating regulations pertinent to this case and because the regulations clearly require that school districts create individualized educational plans for exceptional students (which may or may not involve accelerated instruction) as well as create a general plan to educate exceptional students, we affirm the order of Commonwealth Court.[3]

Affirmed.

STOUT, J., did not participate in the consideration or decision of this matter.

---

**3.** The school district's additional claim that the Secretary improperly limited his review of the hearing officer's report is also without merit. As observed by Commonwealth Court, although the Secretary was free to make his own findings, the record indicates that he adopted the findings of the hearing officer after an independent examination of the record led him to concur with the reasoning and findings of the hearing officer.