**NEW BRIGHTON AREA SCHOOL DISTRICT, Petitioner,**

v.

**MATTHEW Z., Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1997.
Decided July 15, 1997.

Joseph M. Spratt, Conway, for petitioner.

Hilary Andrew Kinal, Beaver, for respondent.

Before PELLEGRINI and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The facts in this special education case are as follows. In 1996, Matthew Z. was a sixteen year old student enrolled in the eleventh grade in the New Brighton Area School District (District). The parties have stipulated that Matthew is an "exceptional student" and is entitled to an individualized education program (IEP).[1] On May 29, 1996, the District convened an IEP team for the purpose of planning an IEP for Matthew for the 1996–1997 school year. Matthew's mother, her advocate, the guidance counselor, and several others attended the meeting. During the course of the meeting, Matthew's mother wrote an IEP which included a short-term objective which indicated that Matthew would "complete ... courses at Geneva College."

Subsequent to that May 29, 1996 meeting, Matthew's mother enrolled him in science and computer courses at Geneva College. The mother then sought reimbursement for the tuition and transportation expenses associated with the college courses. The District declined to reimburse Matthew's parents. A due process hearing was held on August 21, 1996 and September 12, 1996. All parties agreed that the District never agreed to pay for tuition and transportation expenses associated with the college courses. On October 6, 1996, the hearing officer ruled that Matthew's mother should not be reimbursed, but rather that a new IEP should be developed. Mother filed exceptions. On November 21, 1996, the Special Education Appeals Review Panel reversed the hearing officer and ordered that the District reimburse mother for the science and computer courses. District appealed.

The sole issue before us for consideration is whether the parents of Matthew are entitled to reimbursement for tuition and transportation costs associated with the college courses listed in the IEP for Matthew and which Matthew was enrolled for the 1996–1997 school year.[2] Our scope of review

1. The Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* at 24 P.S. § 13–1371(1), defines "exceptional children" as follows:

 (1) The term "exceptional children" shall mean children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational facilities or services and shall include all children in detention homes.

2. The District actually poses three (3) issues for our consideration, namely, 1) whether a public school district has a legal obligation to reimburse

is limited to a determination of whether there has been a violation of constitutional rights, errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *Ellis v. Chester Upland School District,* 651 A.2d 616, 618 n. 1 (Pa.Cmwlth.1994).

 The case law in this Commonwealth with regard to the issue presented is clear. The Supreme Court has determined the regulations clearly require that a public school district create IEP's for exceptional students as well as create a general plan to educate exceptional students but that the public school district has no legal obligation to provide exceptional or mentally gifted students with an IEP that is beyond or outside of the scope of the district's existing and regular special education curriculum. *Centennial School District v. Department of Education,* 517 Pa. 540, 539 A.2d 785 (1988). The Supreme Court in *Centennial* reasoned that:

> The rule which we extrapolate ... is that a school district may not be required to become a Harvard or a Princeton to all who have IQ's over 130. We agree that "gifted" students are entitled to special programs as a group to bring their talents to as complete a fruition as our facilities allow. We do not, however, construe the legislation as authorizing individual tutors or exclusive individual programs outside or beyond the district's existing, regular and special education curricular offerings.

*Id.,* 539 A.2d at 791.

 This Court followed the *Centennial* decision when we determined that the curriculum offered to exceptional students need not "maximize" the student's ability to benefit from an IEP, but is only required to provide an appropriate program for the student. *Ellis.* In *Ellis,* the parent argued that the program offered by the district was not an appropriate program and the IEP did not meet the needs of the student. We held

that gifted students are not among those eligible for tuition reimbursement or transportation expenses for private schools. *Id.* We now expand that holding to the extent that such gifted students are not eligible for tuition reimbursement or transportation expenses for college courses unless specifically agreed to by the public school district which the student attends.

 In this case, the District offered advanced classes, permission to be away from school during regular hours and offered to provide Matthew with independent study programs. However, the District never agreed to pay for tuition associated with college courses. Thus, although Matthew is entitled to a free appropriate public education and is an exceptional student entitled to an IEP, the District cannot be compelled to pay for college courses or transportation that are beyond its current curriculum. Such a provision would constitute more than a free appropriate public education.

Accordingly, we reverse the order of the Special Education Appeals Review Panel and deny reimbursement.

### ORDER

AND NOW, this 15th day of July, 1997, the November 21, 1996 order of the Special Education Appeals Review Panel is reversed.

---

parents of a gifted education student for college tuition and travel expenses as part of the student's free appropriate public education, 2) whether the silence of the District during formulation of the IEP constitutes consent to reimburse the parents for the cost of the college courses, and 3) whether the appeal review panel

has the authority to reject a finding of the hearing officer and write its own IEP in lieu of having the IEP team reconvene and formulate a new IEP. Because of our disposition of the first issue presented, we do not address the latter issues.