**B.C., by and through his parent and natural guardian, J.C.,**
Petitioner

v.

**PENN MANOR SCHOOL DISTRICT,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 2006.

Decided Aug. 15, 2006.

James R. Clark, Lancaster, for petitioner.

Kim R. Smith, Lancaster, for respondent.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

B.C. (Student), by and through his parent and natural guardian, J.C., appeals from a determination of the Special Edu-

cation Due Process Appeals Review Panel (Panel), which affirmed a hearing officer's award of one hour of compensatory education for every school day of the 2003–04 school year and no compensatory education for the 2002–03 or 2004–05 school years. We affirm.

Student, who began kindergarten in the Penn Manor School District (District) during the 2000–01 school year, was identified as a gifted student during the 2001–02 school year.[1] On November 12, 2002, the District issued a report concluding that Student was eligible for the District's Discover program, which is a "pull-out," theme-based enrichment program for gifted students.[2] As such, the District created a gifted individualized education program (GIEP)[3] for Student for the 2002–03 school year. When it was finalized, Student's parents (Parents) signed the Notice of Recommended Assignment (NORA) agreeing to the services contained therein. The 2002–03 GIEP essentially tracked the Discover program's themes, but provided little individualized education. *See* R.R. 1051a–57a.

On September 4, 2003, the 2003–04 GIEP was finalized with Parents signing the NORA. The 2003–04 GIEP outlined that Student would receive advanced math instruction, but did not provide any other individualized instruction. Once again, the short-term learning outcomes and goals tracked the three topics presented within the Discover program that year (Student participated in Discover during the 2003–04 school year for approximately 1.5 to 2.0 hours per school day out of a "six-school-day cycle"). Additionally, as per the 2003–04 GIEP, Student received accelerated math instruction in a small group for fifty minutes per day.

Because they believed Student was not receiving sufficiently individualized instruction, on March 8, 2004, Parents requested that Student be re-evaluated, which the District did between May 20 and 21, 2004. Additionally, Parents twice had Student independently evaluated.[4] Subsequently, Student rejected the proposed 2004–05 GIEP and ensuing revisions thereto. Eventually, on August 5, 2004

---

**1.** Student is unquestionably a gifted student with a full scale IQ of 144, a verbal IQ of 148 and a performance IQ of 132. Generally, to qualify for gifted services in Pennsylvania, a student must have an IQ at or above 130. *See* 22 Pa.Code § 16.21(d).

**2.** Essentially, the Discover program involves topic-oriented instruction, in which students are encouraged to pick an individual project involving one or more school subject areas within the Discover program's topics.

**3.** Title 22, Chapter 16 of the Pennsylvania Code sets forth the extensive requirements for drafting GIEPs, including identifying the gifted child, completing a multi-disciplinary evaluation and reevaluation, and writing a GIEP with the student, the student's parents, and representatives from the school District. *See* 22 Pa.Code § 16.21–16.32. The GIEP is to include: 1) a statement of the student's pres-

ent levels of educational performance; 2) annual goals and short-term learning outcomes which are responsive to the student's needs as identified in the evaluation report; 3) a statement of the specially designed instruction and support services that the student will receive; 4) projected dates for initiation and duration of the GIEP services; 5) objective criteria, assessment procedures, and timelines to determine whether the student has met the goals and learning outcomes; and 6) the names of the persons who helped draft the GIEP and the date of the meeting. 22 Pa. Code § 16.32(e).

**4.** Parents shared these independent evaluations with the District. Additionally, Student presented the testimony of the independent evaluators and their reports to the hearing officer. Student's experts concluded that Student was gifted in all areas of instruction, especially math, with the exception of art.

Parents requested a due process hearing.[5]

Between December 6, 2004, and February 15, 2005, the requested due process hearing took place with Student and the District presenting extensive testimony, including that from Student's teachers, persons who evaluated Student, Student, and his father, and copious documents, including Student's GIEPs (from 2002 through 2005), various evaluations performed upon Student, Student's schoolwork, correspondence between the District and Student's Parents, and Student's academic record. On April 2, 2005, the hearing officer filed extensive findings of fact and conclusions of law. Although Student presented evidence on the 2002–03 GIEP, the hearing officer held that any claim regarding the 2002–03 GIEP was time-barred under *Montour School District v. S.T.*, 805 A.2d 29 (Pa.Cmwlth.2002) (*Montour*) (establishing that the statute of limitations in compensatory education cases begins one year from the date that a due process hearing is requested, unless the party proves that mitigating circumstances existed, which extends the statute of limitations to two years prior to the due process hearing request) and *Carlynton School District v. D.S.*, 815 A.2d 666 (Pa.Cmwlth.2003) (*Carlynton*) (applying *Montour* to compensatory education claims involving gifted students). Further, the hearing officer held that Student failed to prove that mitigating circumstances existed to excuse his delay in requesting a due process hearing.

On Student's claim for compensatory education for the 2003–04 school year, the hearing officer found that the 2003–04 GIEP was procedurally deficient in that it failed to sufficiently describe Student's present abilities or needs, did not contain necessary test scores or descriptive goals, and generally failed to provide student with individualized instruction. As for the 2004–05 GIEP, the hearing officer found that, although it did not contain short-term learning outcomes or a sufficient spelling program, it was a vast improvement over the 2003–04 GIEP, as it provided for further testing of Student and individualized instruction in virtually every subject area. Based on her findings, the hearing officer concluded that Student was denied a free and appropriate public education (FAPE) for the 2003–04 school year and ordered one hour of compensatory education for every school day of the 2003–04 school year. In contrast, the hearing officer found that Student received a FAPE for the 2004–05 school year and, thus, did not award any compensatory education for that school year. However, she did order the District to draft the 2004–05 GIEP with short-term learning outcomes.

Both Student and the District filed exceptions to the hearing officer's decision with the Panel.[6] The Panel conducted an independent review of the evidence, assessed credibility, and weighed the evidence. *See York Suburban Sch. Dist. v. S.P.*, 872 A.2d 1285 (Pa.Cmwlth.2005) (establishing that the Panel is the fact-finding body and that the Panel must make an independent review of the evidence). First, the Panel rejected Student's exception that the statute of limitations was actually two years. The Panel held that the recently reauthorized Individuals with

---

**5.** Following Parents' request for a due process hearing, the Parents further rejected four additional revisions to the 2004–05 GIEP.

**6.** Student's exceptions and brief in support of those exceptions were not included with the original record. Although the District filed a supplemental reproduced record containing a copy of Student's brief, it was not considered by this court as it is not part of the original record. Thus, any discussion that follows regarding Student's exceptions is taken from the Panel's characterization of those exceptions.

Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*, was inapplicable to gifted students [7] and that, in any case, the provisions that Student pointed to in support were not effective until July 1, 2005. Further, the Panel held that Student failed to present any mitigating circumstances to excuse his delay in requesting a due process hearing, and thus, the appropriate statute of limitations under *Montour* and *Carlynton* was one year.

Second, the Panel rejected Student's exception to the amount of compensatory education awarded, finding that Student was not entitled to a full day of compensatory education for each day of the 2003–04 school year, nor was he automatically entitled to compensatory education for the 2004–05 school year by virtue of the presence of minor deficiencies in the 2004–05 GIEP. Specifically, the Panel held:

> On the other hand, for the 2004–05 school year, we conclude that the ultimately revised GIEP met the applicable standard. Unlike its predecessors for the previous years, it was not of the cookie-cutter variety. More specifically, it included, *inter alia,* the following features reasonably responsive to the Student's individual, gifted needs: 1) specific present educational levels; 2) acceleration and enrichment in math and reading, [sic] 3) coordinated enrichment activities and social studies and science; and 4) sufficient support services.
>
> Overall, we conclude that the hearing officer's calculus of one hour for each day in the 2003–04 school year, i.e., a total compensatory education award of approximately 180 hours, was within equitable bounds. For the relevant year, the amount of gifted support approximated an average of slightly more than an hour per day. This amount does not include the differentiated instruction amounting to specially designed education beyond the pull-out program. Yet, various equitable reductions, including but not limited to absences, [and services received in both the Discover program and small math group] serve as counterbalancing offsets. Moreover, although the relevant GIEP for our determination usually is the latest one proposed before the Parents filed for the hearing, in this case the period of time that the District took to improve the 7/4/04 GIEP to the point of being appropriate effectively serves as a reasonable measure of the reduction for reasonable rectification. Thus, although she did not specifically explain her process of calculation, the hearing officer's bottom line in terms of the amount of compensatory education passes equitable muster as a reasonably tailored level of relief in this case.

*In re: The Educational Assignment of B.C.,* (Special Educ. Op. No. 1604, filed May 6, 2005), slip op. at 8–9 (footnotes omitted). As such, the Panel affirmed the hearing officer's award of one hour of compensatory education for every school day of the 2003–04 school year, but modified the part of the hearing officer's order that required the District to draft short-term learning outcomes for the 2004–05 GIEP to be merely a strong suggestion.[8]

---

7. *See Saucon Valley Sch. Dist. v. Jason O.,* 785 A.2d 1069, 1075 n. 10 (Pa.Cmwlth.2001) (determining that IDEA, which is a federal statute that applies only to students receiving special education, is not applicable to gifted students, to whom Title 22, Chapter 16 of the Pennsylvania Code applies).

8. The Panel also rejected the District's exception that it had proved the 2003–04 GIEP was sufficiently individualized.

Student appealed to this court arguing that the Panel erred in applying a one-year statute of limitations period to his challenge of the 2002–03 GIEP because: 1) the Panel should have applied a six-year statute of limitations period under Section 5527 of the Judicial Code, 42 Pa.C.S. § 5527;[9] 2) the minority tolling provisions of Section 5533(b) of the Judicial Code, 42 Pa.C.S. § 5533(b), should have tolled the statute of limitations period until student reached eighteen years of age; 3) *Montour* and *Carlynton* were wrongly decided and this court should adopt an "equitable statute of limitations," which runs from the time the District knows or should have known that the GIEP is deficient; and 4) the Panel erred in failing to find that mitigating circumstances existed. Student also argues that the Panel erred in awarding an insufficient amount of compensatory education for the 2003–04 and 2004–05 school years.

### *Issue Preservation*

 Before reaching the merits of the issues that Student has appealed, we first address whether Student has properly preserved all of the issues he is now raising for our review. It is well-settled that, where an issue was not raised below, it will not be addressed for the first time in this court. Pa. R.A.P. 1551. To preserve an issue for review, a litigant must make a timely objection at the hearing before the lower tribunal. *In re: Condemnation by the County of Allegheny of a Certain Par-*

*cel of Land in Robinson Twp.*, 70 Pa. Cmwlth. 642, 453 A.2d 744, 745 (1982). Furthermore, the Rules of Appellate Procedure require a petitioner to set forth the location in the record where the issue was raised and preserved below. *See* Pa. R.A.P. 2117(c) (requiring the statement of the case in an appellate brief to identify the place and manner in which the issues were raised and preserved below); and Pa. R.A.P. 2119(e) (requiring argument in an appellate brief to identify where the issues were raised below).

Our review of the record indicates that Student failed to argue, before either administrative body, that: 1) a six-year statute of limitations applied; 2) the minority tolling provision of the Judicial Code tolled the statute of limitations; or, 3) this court should disregard *Montour* and *Carlynton* and adopt an "equitable statute of limitations." Moreover, Student has not identified anywhere in his brief where these issues were properly raised and preserved below. Although Student argues that he is merely "refining" issues that he did raise below, we disagree. Instead, Student is raising entirely new arguments regarding the applicable statute of limitations, all of which he never identified or raised before either lower body. What the record reveals is that Student has consistently changed his legal theory regarding the statute of limitations in an attempt to find a meritorious argument.[10] Thus,

9. The Judicial Code has been recently amended by the Act of May 4, 2006 (Act No. 34 of 2006), to take effect in 120 days. The amendment is of no moment in this particular case.

10. In his reply brief, Student argues that these issues are not waived because: 1) he has merely refined his argument; 2) equity requires that this court apply a longer statute of limitations period; and 3) the District's citation in its brief to the Local Agency Law, 2 Pa.C.S. § 753(a), rather than to the Administrative Agency Law, results in waiver. These

contentions are all unmeritorious. First, as discussed above, Student has not merely refined his argument but, instead, is raising new legal arguments for the first time before this court. Second, in *Montour*, this court considered the equitable nature of a compensatory education award and chose to limit the statute of limitations to one year. *Id.* at 37 and 40. Finally, assuming *arguendo* that an incorrect citation alone can be the basis for waiver, this court may raise the issue of waiver *sua sponte.* Furthermore, although the

these arguments are waived. Even if that were not the case, we are bound by the decisions in *Montour* and *Carlynton* and decline Student's invitation to re-evaluate these precedents.

### Statute of Limitations

 We next turn to Student's argument that he proved mitigating circumstances existed to extend the limitations period beyond one year.[11] *Montour* and *Carlynton* established that, in compensatory education cases, a party can only challenge the GIEPs falling within the one-year period prior to the request for a due process hearing, unless that party proves that mitigating circumstances existed to excuse their delay in requesting a due process hearing. Then, the statute of limitations period is extended to two years prior to the request for a due process hearing. Although this court has not identified standards to measure "mitigating circumstances,"[12] we need not do so here because Student has failed to present any relevant facts demonstrating why he was delayed in requesting a due process hearing, much less why we should excuse this delay.[13] Thus, in light of Student's failure to articulate any relevant facts demonstrating why he was delayed in requesting a due process hearing or why his delay

should be excused, we hold that the Panel's finding that Student failed to prove mitigating circumstances is supported by substantial evidence. We therefore conclude that the panel appropriately applied a ·one-year statute of limitations period and, consequently, only considered Student's claims regarding the 2003–04 and 2004–05 GIEPs.

### Award of Compensatory Education

 We next turn to Student's argument that the Panel erred in awarding him only one hour per school day of compensatory education for the 2003–04 year and no compensatory education for the 2004–05 year. This court has recognized that when a gifted child is denied a FAPE, compensatory education may be an appropriate remedy for the District's failure to provide an adequate educational program for the gifted child. *Brownsville Area Sch. Dist. v. Student X,* 729 A.2d 198 (Pa.Cmwlth. 1999). "[Compensatory education's] purpose is to fairly compensate the student whose school district has failed to provide the student a free appropriate public education." *Id.* at 200. However, in the context of gifted education, the compensatory education award must be limited to the

---

District incorrectly cited to the Local Agency Law instead of to Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703, District's subsequent citations to case law discussing waiver under Section 703(a), such as *Wing v. Unemployment Compensation Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981) and *Sharp Equipment Co. v. Unemployment Compensation Board of Review,* 808 A.2d 1019 (Pa.Cmwlth.2002), sufficiently asserted waiver.

11. Our review is limited to determining whether the panel's decision was supported by substantial evidence or whether the panel committed an error of law. *Brownsville Area Sch. Dist. v. Student X,* 729 A.2d 198 (Pa. Cmwlth.1999).

12. Student requests that we define "mitigating circumstances" broadly in compensatory education cases yet has not suggested a definition for this court to adopt.

13. As proof of mitigating circumstances, Student points to the District's policy of screening all second grade students for giftedness, but not before that unless a teacher identifies a kindergartner or first grader as exceptional. We agree with the Panel that Student fails to explain how this policy delayed his request for a due process hearing before August 2004. Additionally, Student received gifted services in his second grade year (2002–03) but is attempting to contest the adequacy of those services.

education available within the curriculum of the school district. _Id._[14] Although this court has determined that compensatory education is an appropriate remedy once the Panel finds that the student was denied a FAPE, we have found no decision setting out a standard for determining the amount of compensatory education to be awarded to a student.

However, three federal circuits have addressed the appropriate standard for determining the amount of compensatory education to be awarded under IDEA.[15] Although these cases involve a different statutory scheme that applies only to students receiving special education services (and not to gifted children), we find the discussions contained therein instructive. Additionally, in their briefs, the parties have suggested standards that they urge this court to adopt in reviewing whether a compensatory education award is appropriate. Student's suggested standard, "[c]ompensatory education equal to the period of the deprivation," is similar to the standard adopted by the United States Court of Appeals for the Third Circuit. Petitioner's Brief at 33. In _M.C. v. Central Regional School District,_ 81 F.3d 389 (3d Cir.1996), the court held that "a disabled child is entitled to compensatory education for a period equal to the period of deprivation." _Id._ at 397. _See also Westendorp v. Indep. Sch. Dist.,_ 35 F.Supp.2d 1134, 1137 (D.Minn.1998) (presuming that an award equal to the period of deprivation is the appropriate remedy based on balancing the equities and facts in the case). As such, in cases under the IDEA, the Third Circuit awards compensatory education solely on the basis of the actual time a student was deprived of a FAPE, without further analysis.

In contrast, the school district suggests a less rigid approach, stating that an award of compensatory education is an equitable, and, hence, discretionary, award, which gives the Panel flexibility in tailoring a particularized award based on the facts and equities of the case. The school district's emphasis on the equitable and discretionary aspect of a compensatory education award is similar to the standard adopted in the Ninth and District of Columbia Circuits. Specifically, when looking at whether a compensatory education award was appropriate, the Ninth Circuit rejected the argument that the student was "ipso facto" entitled to an amount of compensatory education equal to the time of deprivation "without any further analysis." _Parents of Student W v. Puyallup Sch. Dist., No. 3,_ 31 F.3d 1489, 1497 (9th Cir.1994). The court stated, "[t]here is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." _Id._ In determining the appropriate amount of compensatory education to be awarded, that court focused on compensatory education's equitable nature and held that the district court should apply a fact-specific analysis

---

**14.** In so holding, the _Brownsville_ decision relied upon the Supreme Court's decision in _Centennial School District v. Department of Education,_ 517 Pa. 540, 539 A.2d 785 (1988). In _Centennial School District,_ the Supreme Court stated:

> a school district may not be required to become a Harvard or a Princeton to all who have IQ's over 130. We agree that "gifted" students are entitled to special programs as a group to bring their talents to as complete

> a fruition as our facilities allow. We do not, however, construe the legislation as authorizing individual tutors or exclusive individual programs outside or beyond the district's existing, regular and special education curricular offerings.

_Id._ at 552–53, 539 A.2d at 791.

**15.** We have found no decisions from the courts of appeal of the other nine circuits.

that focused on both parties' conduct and what the student had or had not achieved. *Id.*

Similarly, in *Reid v. District of Columbia*, 401 F.3d 516 (D.C.Cir.2005), the court rejected a "mechanical calculation" of a compensatory education award. *Id.* at 518. Specifically, the court stated:

> "[C]ompensatory education is not a contractual remedy, but an equitable remedy, part of the court's resources in crafting 'appropriate relief.'" More specifically, as the Fourth Circuit has explained, "[c]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." Overlooking this equitable focus, the [student's] hour-for-hour formula in effect treats compensatory education as a form of damages—a charge on school districts equal to expenditures they should have made previously. Yet "[t]he essence of equity jurisdiction" is "to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."

*Id.* at 523–24 (citations omitted). The court agreed with the Ninth's Circuit's rejection of "day-for-day compensation for time missed," stating:

> We think it would be highly incongruous if this qualitative focus on individual needs gave way to mechanical hour-counting when past rather than current violations of the FAPE standard were at issue. Accordingly, just as IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments.
>
> Unlike the [student's] one-for-one standard, this flexible approach will produce different results in different cases depending on the child's needs. Some students may require only short, intensive compensatory programs targeted at specific problems or deficiencies. Others may need extended programs, perhaps even exceeding hour-for-hour replacement of time spent without FAPE. In addition, courts have recognized that in setting the award, equity may sometimes require consideration of the parties' conduct, such as when the school system reasonably "require[s] some time to respond to a complex problem," or when parents' refusal to accept special education delays the child's receipt of appropriate services. In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.

*Id.* at 524 (citations omitted). In conclusion, the court held that the student was not entitled "to an amount of such [compensatory education as] predetermined by a cookie-cutter formula, but rather to an informed and reasonable exercise of discretion regarding what services he needs to elevate him to the position he would have occupied absent the school district's failures." *Id.* at 527.

█ We find the Ninth and District Columbia's Circuits' standard more persuasive and workable than that of the Third Circuit, as it tailors the equitable award of compensatory education to the particular student's needs, which a one-for-one standard fails to do. Hence, we reject Student's proposed hour-for-hour standard. Rather, we hold that where there is a finding that a student is denied a FAPE and the Panel determines that an award of compensatory

education is appropriate, the student is entitled to an amount of compensatory education reasonably calculated to bring him to the position that he would have occupied but for the school district's failure to provide a FAPE. As noted by the District of Columbia Circuit, doing so may require awarding the student more compensatory education time than a one-for-one standard would, while in other situations the student may be entitled to little or no compensatory education, because (s)he has progressed appropriately despite having been denied a FAPE.

Of course, since we have not previously set out this standard in these terms, it was not specifically addressed by the hearing officer or the Panel, as should occur in future cases. Nonetheless, given the evidence in this case, the special expertise of hearing officers and the Panel in such matters and the equitable nature of compensatory awards, we are satisfied that the award here was not an abuse of discretion, but was appropriate under the circumstances.

Accordingly, we affirm.

### ORDER

AND NOW, this 15th day of August, 2006, the order of the Special Education Due Process Appeals Panel in the above captioned matter is hereby AFFIRMED.