**DANIEL G., By and Through his parents and natural guardians, ROBERT and Mary G., Petitioners**

**v.**

**DELAWARE VALLEY SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 23, 2002.

Decided Dec. 23, 2002.

Ira M. Fingles, Lawrenceville, NJ, for petitioners.

Andria L. Borock, Huntingdon Valley, for respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Daniel G. (Daniel) and his parents, Robert and Mary G. (Parents), petition for review of the order of the Special Education Due Process Appeals Review panel (Appeals Panel) that essentially declined tuition reimbursement for Daniel's unilateral out-of-state placement and approved accommodations recommended by the Delaware Valley School District (District). We affirm.

In this, our second review of the appropriateness of Daniel's placement, all parties agree that Daniel, born on November 23, 1987, is eligible for special education services pursuant to the Individuals with Disabilities Education Act (IDEA)[1] because of his learning disabilities in reading, written expression and mathematics. With the exception of his first grade year, Daniel attended District schools in kindergarten and in grades two through six. Parents were not satisfied with Daniel's progress in the District after he completed sixth grade in June 2000, so they enrolled him in the Oakland School (Oakland), a private co-educational school near Charlottesville, Virginia, licensed to provide its students both regular and special education.

Parents sought tuition reimbursement from the District for Daniel's attend-

[1]. 20 U.S.C. §§ 1400–1490.

ance at Oakland during his seventh grade school year. The Appeals Panel found in their favor and required the District to reimburse Parents for the cost of Daniel's tuition at Oakland. The District appealed that decision to this Court (the first appeal), and we reversed it. We concluded that, because Daniel made a two-month gain in reading over a ten-month period, he received an educational benefit from the District's program. Parents were unhappy with the rate of Daniel's progress in the District, particularly when compared with his reading improvement while at Oakland. We determined, however, that Parents did not establish the District program was inappropriate for their son. The necessary standard, that the child with disabilities receive a "free appropriate public education" (FAPE),[2] does not require the District to maximize Daniel's potential commensurate with his peers. *Delaware Valley Sch. Dist. v. Daniel G.*, 800 A.2d 989 (Pa.Cmwlth.2002).

While the first appeal regarding seventh grade was pending before this Court, the District completed a multidisciplinary evaluation of Daniel in May 2001, in order to determine the appropriateness of Daniel's educational program before the beginning of Daniel's eighth grade school year. A comprehensive evaluation report was prepared, and the team preparing Daniel's individualized education program (IEP) met one month later. Thereafter, the District offered to provide Daniel part-time learning support in the regular school. Daniel's parents disapproved, requested a due process hearing, and again asked that the District pay for Daniel's placement at Oakland for his eighth grade school year. The hearing officer, affirmed by the Appeals Panel, determined that the District's proposed placement for Daniel would confer a meaningful educational benefit.

On appeal to this Court, Parents raise five issues. They assert that three findings of fact are not supported by substantial record evidence. Specifically, Parents assign error in the findings: 1) that Daniel's achievement levels remained stable during his seventh grade year at Oakland; 2) that the District made a substantial effort to develop an appropriate IEP for Daniel; and 3) that the record from the first appeal was not relevant to demonstrate the District's bad faith or the depth of Daniel's disability. Next, Parents again argue the District failed to offer Daniel a FAPE for his eighth grade school year. Finally, Parents conclude they are entitled to reimbursement for the cost of enrolling Daniel at Oakland during his eighth grade school year.

I.

When reviewing an Appeals Panel's findings of fact and the weight given to the evidence, this Court's review is limited to determining whether the adjudication is

---

**2.** IDEA establishes minimum requirements for the education of children with disabilities and requires a state, in order to receive federal assistance under IDEA, to provide a child with disabilities a "free appropriate public education" (FAPE). The child's FAPE is to be based upon the unique needs of the student. 20 U.S.C. § 1412. IDEA defines FAPE as special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the state educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the state involved; and (D) are provided in conformity with the individualized education program [IEP] required under section 1415(a)(5) of Title 20. 20 U.S.C. § 1401(a)(18). The Commonwealth, through the Department of Education, has promulgated standards and regulations (state regulations) to implement IDEA. Under the state regulations, a school district must develop an IEP tailored for each child.

supported by substantial evidence.[3] In the past we rejected a school district's argument that an appeals panel did not give proper deference to a hearing officer's findings of fact. *Punxsutawney Area Sch. Dist. v. Kanouff,* 663 A.2d 831 (Pa.Cmwlth. 1995). We also reviewed a claim that services produced meaningful progress towards identified goals. *Barbara de Mora v. Dept. of Public Welfare,* 768 A.2d 904 (Pa.Cmwlth.2001).[4]

Here, Parents' allege error in the Appeals Panel's acceptance of the finding that Daniel's achievement levels remained sta-

ble during his seventh grade school year at Oakland.[5] They assert that the weight of the evidence establishes Daniel made significant progress in reading while at Oakland.[6]

We disagree. Our review of the record leads us to conclude that substantial evidence supports the finding. Reproduced Record (R.R.) at 110a, 118a–119a, 221a–227a.

## II.

Parents also claim error in finding the District made "a substantial effort" to de-

3. This Court's review of an order of the Appeals Panel is limited to a determination of whether the adjudication is supported by substantial evidence and whether errors of law were committed or constitutional rights were violated. *Delaware Valley Sch. Dist. v. Daniel G.,* 800 A.2d 989 (Pa.Cmwlth.2002). We note that the final arbiter of fact is the Appeals Panel and not the hearing officer. *Id.* Here, the Appeals Panel affirmed all the hearing officer's findings. A special education appeals panel is charged with making an independent examination of the evidence of record, subject to review by this Court. *Punxsutawney Area Sch. Dist. v. Kanouff,* 663 A.2d 831 (Pa.Cmwlth.1995). This Court's normal standard of review applicable to a party's disagreement with the weight given the record evidence is limited to whether the adjudication is supported by substantial evidence. Administrative Agency Law, 2 Pa.

C.S. §§ 701–704; *Montour Sch. Dist. v. S.T. and His Parents,* 805 A.2d 29 (Pa.Cmwlth. 2002).

4. In *de Mora,* this Court examined whether an individualized family service plan (IFSP) was appropriate under Part C of IDEA (covering children less than three years of age). 20 U.S.C. § 1432(4)(C); 34 C.F.R. § 303.344(d)(1). We granted the family reimbursement for its provision of private supplemental services because the county failed to prove the IFSP services it provided produced meaningful progress toward the IFSP goals. *Id.*

5. Parents challenge the weight given to testimony by the District's school psychologist, the weight given to testimony by their psychologist, the significance of scores on various tests and subtests, and the weight given to testimony by Daniel's Oakland teachers.

6. Finding of Fact No. 3 states, "Daniel's achievement levels remained stable from 2000 to 2001." The hearing officer compared the scores of the Wenchsler Individual Achievement Tests (WIAT) Psychological Testing completed in May 2000 and in May 2001:

| | 2001 Standard Scores | | 2000 Standard Scores | |
|---|---|---|---|---|
| | SS | Percentile | SS | Percentile |
| Basic Reading | 74 | 4 | 67 | 1 |
| Math Reasoning | 82 | 12 | 88 | 21 |
| Spelling | 77 | 6 | 68 | 2 |
| Reading Comprehension | 79 | 8 | 74 | 4 |
| Memory Operations | 80 | 9 | 81 | 10 |
| Listening Comprehension | 103 | 58 | 106 | 58 |
| Written Expression | 80 | 9 | 87 | 32 |
| Composite Reading | 70 | 2 | 64 | 1 |
| Math | 78 | 7 | 83 | 3 |
| Writing | 75 | 5 | 70 | 1 |

velop an appropriate IEP for Daniel,[7] contending such a finding is not supported by substantial evidence. We conclude there is no error in the Appeals Panel's decision regarding the District's effort to identify Daniel's educational goals and to assist him in achieving them.

■ The Supreme Court has held a school district's failure to offer an IEP reasonably calculated to enable the child to receive meaningful educational benefit will be deemed a denial of a FAPE for that child. *Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Federal regulations impose upon the District a duty to make a good faith effort to assist the child to achieve the goals and objectives listed in the child's IEP. 34 C.F.R. § 300.350(a). Our review of the voluminous record here supports the Appeals Panel's conclusion that the District did make such a good faith effort. The contents of the IEP,[8] crafted by the IEP team of which the Parents were a

part,[9] substantiate the District's effort. The IEP's goals, objectives, and services, reviewed below, convey the District's intent to challenge Daniel to make substantial gains in reading. Hearing Examiner Op. at 9, R.R. at 57a, 58a.

To achieve the IEP's goals and objectives, the District promised to provide Daniel two reading teachers, and it proposed two daily one-on-one reading periods using the same reading approach as Oakland.[10] The District also proposed to provide Daniel with one reading period of no more than four students, in order to provide more practice trials and frequent reading review. Additionally, the staff recommended moving Daniel's desk close to the blackboard, providing calculators and other multi-sensory approaches, hands-on activities, and repeated drills. The District's IEP also involved teaching Daniel self-monitoring, providing him with critical vocabulary lists for content material, insuring the support of a special education teacher while attending science and

7. Parents contend the District's IEP process was inadequate because, other than its own expert's evaluation, no one from the District had seen Daniel since he left for Oakland a year earlier, the District did not contact Oakland for input from its professionals and did not conduct a classroom evaluation of Daniel at Oakland. Parents conclude the District merely attached Oakland's material to the comprehensive evaluation report without referring to it, despite the fact that it contradicted the District's own test results. As further support, the Parents point to the hearing officer's order that the District develop a new IEP for Daniel and his observation that "[m]ore must be done in terms of obtaining a grasp of the nature of [Daniel's] current instruction, the gains made, and how this information can be incorporated into the current IEP." Reproduced Record (R.R.) at 59a.

Parents use this statement by the hearing officer as evidence that the hearing officer must have determined the current IEP was not acceptable because the District failed to contact Oakland, even though the hearing of-

ficer approved the District's proposed in-district placement. Parents reason that the hearing officer's conclusion is contrary to his own opinion, as well as contrary to substantial record evidence.

8. R.R. at 232a–243a.

9. In addition to the Parents, the IEP team included a District regular education teacher, a special education teacher, and the supervisor of the District's special education program.

10. Both of Daniel's reading teachers participated in a five day, 30–hour program learning the Orton–Gillingham philosophy of teaching reading used at Oakland. The key to this philosophy is its reliance on multi-sensory instruction and flexibility. Both reading teachers have implemented this strategy since September 2001. Moreover, both reading teachers are certified by the Commonwealth to teach special education; one is also certified as a reading specialist. R.R. at 58a.

social studies classes and providing additional instruction by a certified special education teacher in mathematics. R.R. at 236a.

The District scheduled Daniel's reading teacher a daily additional period during which she is responsible for coordinating Daniel's program with the other teachers responsible for his instruction. R.R. at 52a, N.T. 63–64, 68–69, 76, 77, 79, 81–82, 99, 122–123. This teacher was provided additional time for this task before and after school, as well as during homeroom period. N.T. 76, 97–98. Both reading teachers impressed the hearing officer with their credentials, knowledge, enthusiasm, and commitment to Daniel's progress. R.R. at 58a.

In summary, the record demonstrates the District fulfilled its duty to make a good faith effort to assist Daniel to achieve the goals in the IEP proposed for his eighth grade year. The hearing officer committed no error in so finding.

### III.

Parents next argue it was error to conclude the record from the first appeal was not relevant to demonstrate the District's bad faith and the depth of Daniel's disability in its development of the IEP for his eighth grade year.

The Appeals Panel decisions must be supported by substantial evidence. *See, e.g. Mifflin County Sch. Dist. v. Special Education Due Process Appeals Board,* 800 A.2d 1010 (Pa.Cmwlth.2002). In evaluating evidence, it is the hearing examiner's duty to make admissibility determinations; he is required to allow only evidence that is relevant and material to the issues presented at the hearing. Hearing Officer Handbook III–B–4–e, cited in Appeals Panel Dec. at 3, 4; R.R. at 7–8a.

Any probative value arising during the extensive litigation involving Daniel's seventh grade placement was clearly outweighed by the dangers of confusion and undue delay in the extensive litigation involving his eighth grade placement. *See* Pa. R.E. 403. Also, it is not error to preclude re-litigation of matters resolved in the first appeal. Parents' contentions to the contrary lack merit.

### IV.

Parents assert the District failed to offer Daniel the required free, appropriate public education or FAPE for his eighth grade year. We conclude there was no error in the Appeals Panel's conclusion of law that the District offered Daniel a FAPE.

■ A court reviewing the administrative decision of a state must give "due weight" to that administrative decision, rather than review the case *de novo. Rowley.* The purpose of the "due weight" obligation is to prevent a reviewing court from imposing its view of preferable educational methods on the states. *Oberti v. Board of Educ.,* 995 F.2d 1204, 1219 (3d Cir.1993).

■ As discussed earlier, implicit in the congressional purpose of providing access to a "free appropriate public education," is the requirement that the education to which access is provided is sufficient to confer some educational benefit upon the child, tailored to the child's unique needs by means of the IEP. *Rowley.* The District has the burden of proving the appropriateness of its proposed IEP. *Carlisle Sch. Dist. v. Scott P.,* 62 F.3d 520, 533 (3d Cir.1995), *cert. denied,* 517 U.S. 1135, 116 S.Ct. 1419, 134 L.Ed.2d 544 (1996). The preceding discussion illustrates the substantial effort the District made in fashioning Daniel's IEP, both procedurally and substantively.

Parents remind us that the educational benefits provided through the IEP in achieving a child's FAPE must be more than trivial. *Oberti.* Parents argue the District's IEP is only another version of similar District programs that failed Daniel in the past. They also contend the District's program is inappropriate because it is not an adequate substitute for the education Daniel received at Oakland and because it may disadvantage him in the future.

 We disagree. Whether an IEP is reasonably calculated to afford a child educational benefits "can only be determined as of the time it is offered to the student and not at some later date.... Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement." *Fuhrmann v. East Hanover Bd. of Educ.,* 993 F.2d 1031, 1040 (3d Cir.1993). The District provided an IEP reasonably calculated to enable Daniel to receive educational benefits. *Rowley.* A FAPE exists if the child is provided with such an education. *Id.* The District is not required to prove the superiority, as opposed to the appropriateness, of its less restrictive placement for Daniel. *Carlisle Sch. Dist.; Millersburg Area Sch. Dist. v. Lynda T.,* 707 A.2d 572 (Pa. Cmwlth.1998).

 Parents' strong desire to keep Daniel in a placement in which they perceive progress is understandable. Nevertheless, an educational program is not inappropriate because a better program is available somewhere else. *See Fuhrmann,* 993 F.2d at 1041 (J. Mansmann's concurring opinion posited the student's

progress at a private school may have been due to the school's program, the student's maturation or other factors).

The District offered Daniel a substantive program using procedures that comported with the applicable regulations. The offered program was reasonably calculated to provide Daniel with a meaningful public educational benefit. Parents did not convince the fact-finder otherwise, nor did they persuade it that Daniel will suffer harm returning to the District or that the program offered will cause him emotional distress.

## V.

 Because we conclude the District offered Daniel the required FAPE, we also conclude Parents are not entitled to reimbursement for the costs of enrolling Daniel at Oakland for his eighth grade school year. School officials who conform to the IDEA need not worry about reimbursement claims. *Florence Cty. Sch. Dist. Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

Accordingly, we affirm the order of the Appeals Panel.

## ORDER

AND NOW, this 23rd day of December, 2002, the order of the Special Education Due Process Appeals Review Panel is affirmed.