**ABINGTON SCHOOL DISTRICT,**
**Petitioner**

v.

**B.G., a Minor, by and through His**
**Parents and Natural Guardians,**
**M.G. and J.P., Respondents.**

**B.G., by his parents and natural**
**guardians, J.P. and M.G.,**
**Petitioners**

v.

**Abington School District, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2010.
Decided Oct. 8, 2010.

---

Claudia L. Huot, Blue Bell, for petitioner.

James R. Clark, Lancaster, for respondent.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Abington School District (School District) has filed a petition for review from

the order of the Special Education Hearing Officer (Hearing Officer) requiring it to provide compensatory education to B.G. (Student) in the area of mathematics and to revise the Student's Gifted Individualized Education Plan (GIEP) to provide for an appropriate and individualized specially designed instruction based on his unique needs and abilities. For the reasons that follow, we reverse the Hearing Officer's decision.

The facts of this case as found by the Hearing Officer are as follows. The Student was born on April 26, 2002, and resided with his parents within the School District. He was enrolled in kindergarten for the 2007–2008 school year. In the fall of that school year, he was evaluated at the request of his parents to determine if he was eligible for gifted support services pursuant to 22 Pa.Code § 16.63(1) dealing with Special Education for Gifted Students. After taking several IQ tests, he scored in the "Very Superior Range" and in the 99.9th percentile in mathematics.[1] It was determined that the Student met the criteria as a mentally gifted student in mathematics,[2] and a GIEP was recommended.[3]

The GIEP team[4] met in December 2007 and developed a GIEP which contained a goal for developing creativity and problem solving skills through a weekly enrichment group/pull-out program called the APEX program (Abington's Program for Excellence). For his specially designed instruction (SDI), the Student had a "Menu of Opportunities" which included opportunities to participate in other enrichment activities such as the "Compass Learning Program" for mathematics (an individual computer-based instruction program in mathematics which was used in kindergarten and which was part of the curriculum for all students in kindergarten through sixth grade) and "First in Math" for mathematics in the regular education classroom. The parents approved the "Notice of Recommended Assignment."

The GIEP team met again in April 2008 to discuss whether the Student should skip first grade and go directly to second grade for the 2008–2009 school year. Prior to this meeting, the School District conducted screening assessments of the Student in mathematics and found several areas of weakness that the Student demonstrated at the first grade level. On a separate Grade K into Grade 1 Placement Test for

---

**1.** While the Student excelled in many areas, the only area of discussion on appeal is mathematics.

**2.** A "mentally gifted" student is defined as one having "outstanding intellectual and creative ability the development of which require specially designed programs or support services, or both, not ordinarily provided in the regular education program." 22 Pa.Code § 16.1.

**3.** 22 Pa.Code § 16.31(a) provides: "A GIEP is a written plan describing the education to be provided to a gifted student. The initial GIEP must be based on and be responsive to the results of the evaluation and be developed and implemented in accordance with this chapter."

**4.** Pursuant to 22 Pa.Code § 16.32(a), "The GIEP team, in accordance with the requirements of this chapter shall, based upon the evaluation report, develop an initial GIEP and arrive at a determination of educational placement. Revisions to GIEPs, changes in educational placement, or continuation of educational placement for a student determined to be a gifted student shall be made by the GIEP team based upon a review of the student's GIEP and instructional activities, present levels of educational performance, as well as on information in the most recent evaluation." The GIEP team consisted of the Student's parents and various teachers, specialists and School District representatives. All members of the GIEP signed their names to the GIEPs.

mathematics, the Student scored 63.6% and demonstrated some degree of weakness in all areas assessed. Nevertheless, the parents wrote to the School District and indicated that they believed the Student should skip first grade math, which the GIEP team agreed to do.

In December 2008, the School District pretested the Student on the end-of-year Grade 2 mathematics assessment and the Grade 2 into Grade 3 Placement Test. On the end-of-year assessment, the Student achieved an 82% and exhibited some weaknesses in several areas. On the Placement Test, the Student demonstrated several areas of need while scoring 100% in other areas. The tests listed his weaknesses in the areas of estimation, more complex fractions, comparing large numbers, finding area and perimeter, measuring to the 1/4 and 1/8 inch and understanding median and mode in the area of probability and statistics. He also had difficulty completing open-ended responses that required several steps and detailed explanations of what was done. His scores on the open-ended responses at the second grade level ranged from 0, 1 and 2 out of a possible score of 4. Due to these test results, the GIEP team informed the Student's parents that he did not meet the criteria for acceleration into third grade mathematics. The GIEP team agreed on a new goal and corresponding objective related to mathematics problem solving and enrichment activities in the regular second grade curriculum.

The parents requested that the Student's GIEP be revised to outline its goals and instruction more specifically and sought more information about the Student's Present Levels of Educational Performance (PLEP) in mathematics. In response, the GIEP team added a new objective for the successful completion of open-ended mathematics problems. The parents again wrote to the School District expressing concerns about inadequate assessment of the Student's PLEP in mathematics. They also provided test results of the Student's performance on the Texas Assessment of Knowledge and Skills (TAKS), which they had obtained from the internet and had given to the Student to complete sometime in January 2009.

In February 2009, the School District and GIEP desired to conduct another assessment, Phase I—Phase II testing, to determine if the Student could be placed into third grade mathematics. The Phase I test was similar to an end-of-book test and required a score of 90% in order to take Phase II. In Phase II, the student was required to take every unit test at the next grade level and score an average of 90% but not need to score 90% on each individual unit before acceleration would be considered. The parents did not agree to have the Student take these tests despite repeated requests. The GIEP team instead added a new objective in mathematics: the Student's participation in the Everyday Math (EDM) program through enrichment and above-grade level work (which was part of the SDI in the prior GIEP). At the same time, the Student participated in the Compass Learning Program at school and, at the behest of his parents, was given a School and College Ability Test (SCAT) administered through Johns Hopkins University's Center for Talented Youth.

The Student finally took a Placement Test in April 2009. He scored an 86.5% on the Grade 2 Placement Test Phase I but only a 68% on the Grade 2 Placement Test Phase II, a basic level. The School District advised the parents that the appropriate mathematics program for the Student would be at a grade 3 level with enrichment and extension activities as well as

"beyond level work" and that the Student did not qualify for acceleration in mathematics. In May 2009, the Student received a revised GIEP, which added new goals and objectives and specified that the Student would be prompted to improve the quality of his work. The parents did not approve or disapprove of the new GIEP. In the Student's third grade year (2009–2010), he participated with his classmates in regular education classes in mathematics and participated in weekly enrichment activities through the APEX and Compass Learning Programs as well as EDM and had opportunities for further enrichment in mathematics in the classroom.

Although the parents, as part of the GIEP team, had signed off on each of the GIEPs and agreed to each of the new GIEPs, including the goals, objective and evaluation criteria, they filed a due process complaint challenging the appropriateness of the Student's educational program since November 25, 2008. They alleged that since 2008, his GIEPs had no goals and no measurable terms of what the Student's actual educational performance was in mathematics and his goals were of the cookie-cutter variety, not designed for the Student's unique needs. The parents sought a remedy of 540 hours of compensatory education as well as an order that the School District conduct a new evaluation limited to obtaining information for the Student's PLEP and develop a new GIEP which was appropriate for the Student. In its answer, the School District argued that its gifted programming for the Student had been and was appropriate.

A due process hearing was held before the Hearing Officer on December 23, 2009. The Student's mother testified that she was dissatisfied with the School District's attention to her son's GIEP stating that it had never had sufficient annual goals or measurable data. She did not believe that the School District responded to her concerns that her son was not being challenged in mathematics or accelerated sufficiently. Her son frequently complained that his math assignments were too easy and repetitive, but in a December 2008 GIEP team meeting, the Student's mother was informed that her son would not be accelerated to the third grade math class because he only tested 88% on the placement test rather than the 90% to be considered for acceleration. The Student's mother also had her son take a SCAT test at the Johns Hopkins University Center for Talented Youth, and her son's score was in the 99th percentile, showing that her son could perform fourth grade math. In her opinion, her son did not make meaningful educational progress from kindergarten through second grade in mathematics and could have done more difficult work in that area.

Currently, the Student's mother stated that her son was in the third grade but was not being challenged. As of the GIEP dated October 27, 2009, her son had not been given a new PLEP testing. His annual goals had not been updated since last April, the School District had not given her any progress monitoring data regarding the annual goals, and she had not been given any measurable data. When asked on cross-examination why she had rejected the School District's offer of the Phase I and II tests to assess his level in mathematics, she stated that the tests were very lengthy and required a score of 90% on each unit test. If her son did not receive a 90% on each of the unit tests, there would not be a change in the placement. It also would not provide useful information in terms of how much he knew about the curriculum.

Several teachers and supervisors then testified. Each supported the School District's assessment that the GIEP was ap-

propriate and that the Student had several areas of deficiencies and should not be further accelerated in mathematics. Kathryn Christiana, Supervisor of Gifted Education and Elementary Curriculum Specialist at the Student's school, testified that after the Student accelerated to the second grade, he was administered testing for placement into grade 3 and showed areas of need, leading to revisions to the GIEP. She believed the GIEP was appropriate and properly addressed the Student's needs in the gifted program. Denise Mendez, Coordinator of Mathematics and Elementary Science, testified primarily regarding the Phase I and Phase II placement tests and procedures stating that the purpose of these tests was to determine if a student could qualify for acceleration. The Student scored too low on these tests, so acceleration into fourth grade math was not recommended.

Mary Johnson, the elementary curriculum specialist for math, testified that her role was to analyze the Student's work and assess him for acceleration. She testified that the Student's test scores in the third grade revealed that he still had difficulty in the same areas that he had in kindergarten. She believed that the Student's present program was appropriate for him and addressed his needs and that he should not be accelerated another year because he was not advanced in every area of math. Maria Gabrys, the Student's third grade teacher, testified that she taught him math and that he did not always get a perfect score. She believed that the Student was receiving an appropriate education in math that addressed his gifted needs because he was not indicating that he was bored and he did not know the answers to everything.

Initially, the Hearing Officer addressed the PLEPs and the parents' request for more specificity in this section of the GIEP since at least December 2008. The Hearing Officer agreed that the School District had proposed to perform more updated testing which would have shown the Student's present levels in mathematics and if acceleration was appropriate, but the parents had refused. Additionally, the School District was not at fault for refusing to rely on the results of the parent-obtained tests whose reliability and validity were "far from clear on this record, as a substitute for a proper assessment of Student's strengths and abilities and to guide programming decisions within the District's curriculum." (Hearing Officer's decision at 12.) Further, even the School District did not perform the pretesting for second grade until December 2008, and the results still revealed certain weaknesses that supported the School District's decision not to accelerate the Student into third grade mathematics. While the parents argued that the Student was obtaining lower test scores than they expected and it was because the material was too easy for him, the Hearing Officer determined that the PLEPs in the School District's GIEPs were clearly based on an objective assessment of his needs and abilities.

The Hearing Officer next addressed the parents' claims that some of the GIEPs in 2008–09 and 2009–10 did not contain goals and that none of the goals were measurable. The Hearing Officer reviewed each of the GIEPs beginning with April 2008 and ending with October 2009, and noted that some did and some did not contain separate mathematics goals. The Hearing Officer went on to state that she found merit to the parents' claims that the goals and objectives were not measurable and failed to address the Student's needs for mathematics enrichments because "with the exception of an identified need related to open-ended math problems, the goal and objectives in the December 2008 GIEP do not correspond to the strengths and weak-

nesses identified in the PLEP section, nor do the stated enrichment areas appear to be individualized to Student." (Hearing Officer's January 6, 2010 decision at 14.) She further added that the use of the terms such as "95% accuracy" in class activities failed to provide the requisite "appropriate objective criteria and assessment procedures" for ascertaining whether the Student had met the goals and objectives. The Hearing Officer found that "the parents' claim that the Student's gifted program in mathematics enrichments was, in many respects, simply a 'one size fits all' approach to enrichment." (Hearing Officer's opinion at 14.)

The Hearing Officer then ordered that the School District provide the Student with compensatory education in the amount of 30 minutes per day for every school day that the Student attended school from November 25, 2008, until such time that an appropriate GIEP was developed in the form of mathematics enrichments and/or acceleration within the School District's curricular offerings. The School District was also to reconvene the GIEP team within 15 days of the date of the order to revise the Student's GIEP to provide for an appropriate and individualized specially designed instruction based on his unique needs and abilities which were to include but not necessarily be limited to mathematics enrichment and, if appropriate, acceleration. This appeal by the School District followed.[5]

The School District contends that it provided the Student with an appropriate gifted education in the area of mathematics because 1) the Student's mathematics goals and objectives in the GIEP were measurable and 2) the School District's

mathematics enrichment program provided to the Student was sufficiently individualized to meet his needs. Because the parents are only complaining about their son's education since November 2008, we need not review the December 3, 2007 GIEP or the April 21, 2008 GIEP developed when the Student was still in kindergarten, but only the December 16, 2008 GIEP.

As to whether the goals and objectives in the GIEP are measurable, 22 Pa.Code § 16.32(d)(5) provides:

(d) The GIEP of each gifted student shall be based on the [Gifted Multidisciplinary Team] GMDT's written report and contain the following:

\*　　\*　　\*

(5) Appropriate objective criteria, assessment procedures and timelines for determining, on at least an annual basis, whether the goals and learning outcomes are being achieved.

The December 16, 2008 GIEP provided:

**The Measurable Annual Goal:** [The Student] will maximize his academic efforts by completing challenging and creative projects in the second grade and APEX Program. (Assigned Date: June 6, 2008)

**Short-term Instructional Objectives or Benchmarks:** [The Student] will work in small groups or in pairs to complete interesting mathematical activities that will enhance and enrich the regular second grade curriculum. Topics will include number sense, practical measurement skills, mental calculation abilities, and mathematical reasoning skills. He will also have the opportunity to practice open ended math problems.

---

5. Our scope of review of a final administrative order is limited to determining whether constitutional rights have been violated, legal error has been committed, or necessary findings of fact have been supported by substantial evidence. *P.E. v. Department of Public Welfare,* 692 A.2d 1155 (Pa.Cmwlth.1997).

**Evaluation Criteria:** 95% accuracy

**Evaluation Procedures:** Class activities, Teacher observation of specific skill, Verbal explanation

The Specially Designed Instruction to be provided to the Student indicated that he would receive enrichment through the APEX Program for 150 minutes per week; that he would participate in small group instruction with the classroom teacher using "Enrichment" and "Beyond Level" materials and activities provided by the math program three times per week; that he would be provided with additional homework challenge problems three times per week; and that under the enrichment activities on the menu of opportunities, he had First in Math Challenge Activities (computer based), TV Math Problem Solving with Dr. Moody and weekly open-ended problems with his classroom teacher as well as unit enrichment activities and games with extensions, also with his classroom teacher.

As to whether there were objective criteria, assessment procedures and timelines for determining whether the goals set for the Student had been achieved, the GIEP indicated that scoring a 95% out of 100% on the Student's assignments was a sufficient indicator to assess whether he had met his goal of completing mathematical problems including number sense, practical measurement skills, mental calculation abilities and mathematical reasoning skills as well as open-ended problems in his regular second grade curriculum. Sim-ilarly, scoring a 3.5 out of 4 is an objective and measurable standard to determine the Student's ability to meet those same goals.

As for the timeliness for determining whether the Student was achieving his goals, while the GIEP was to be reviewed on an annual basis, the Student's parents requested reviews much more frequently. The GIEP was reviewed again on January 23, 2009, although no changes were made at that time. However, the parents signed off on that GIEP noting that no changes were made. Again, on February 19, 2009, the parents requested that the GIEP be reviewed, and at that date, some minor changes were made to the Student's short-term objectives. Again, the parents signed off on that GIEP. The parents again requested a review of the GIEP on May 12, 2009, and major changes were made to all aspects of the Student's GIEP which the parents signed.

■ After reviewing all of the GIEPs since December 16, 2008, the School District did not fail to meet its obligations under 22 Pa.Code § 16.32(d)(5) to prove that the Student's mathematics goals and objectives in the GIEP were measurable. Not one witness, including the Student's mother, testified as to why the scores provided by the School District as criteria were not sufficient benchmarks. Most notable is that the Student's mother was at every single GIEP meeting, which meant she agreed to the goals, objectives and assessment criteria for measuring whether the Student was achieving his goals.[6]

6. While not raised by the School District, we note that the Student's mother signed off on all of the GIEPs and then filed her petition for review. Pursuant to 22 Pa.Code §§ 16.62(4) and (5), when a GIEP is completed and presented to the parents along with a notice of recommended assignment signed by the School District and a notice of parental right to an impartial due process hearing under 22 Pa.Code § 16.63, the parents then have 10 days to respond to the notice by mail or five days in person at the conclusion of a GIEP conference. If the parents receive the notice in person and approve the recommended assignment within five calendar days, the School District may not implement the GIEP for at least five days to give the parents an opportunity to notify the School District with that five-day period of a decision to revoke

As to the whether the School District's mathematics enrichment program provided to the Student was sufficiently individualized to meet his needs, the December 16, 2008 GIEP provided Student with a Specially Designed Instruction in which he would receive enrichment through the APEX Program for 150 minutes per week; he would participate in small group instruction with the classroom teacher using "Enrichment" and "Beyond Level" materials and activities provided by the math program three times per week; he would be provided with additional homework challenge problems three times per week; and under the enrichment activities on the menu of opportunities, he had First in Math Challenge Activities (computer based), TV Math Problem Solving with Dr. Moody and weekly open-ended problems with his classroom teacher as well as unit enrichment activities and games with extensions, also with his classroom teacher. Essentially, the Student's mother wanted her son to receive more privatized education in math than he was receiving.

■■■ While a school district is required to provide an education sufficient to confer an education benefit upon a gifted student and it must be "tailored to the child's unique needs by means of the IEP," *Daniel G. v. Delaware Valley School District*, 813 A.2d 36, 39 (Pa.Cmwlth.2002); 22 Pa.Code §§ 14.1–14.2(d)(4)(8), compensatory education is limited to education available within the curriculum of the school

district and does not require individual tutors:

> [A] school district may not be required to become a Harvard or a Princeton to all who have IQ's over 130. We agree that 'gifted' students are entitled to special programs as a group to bring their talents to as complete a fruition as our facilities allow. We do not, however, construe the legislation as authorizing individual tutors or exclusive individual programs outside or beyond the district's existing, regular and special education curricular offerings.

*Brownsville Area School District v. Student X*, 729 A.2d 198, 200 (Pa.Cmwlth. 1999) (citing *Centennial School District v. Department of Education*, 517 Pa. 540, 552–553, 539 A.2d 785, 791 (1988)). In this case, the School District has provided numerous opportunities for the Student, as set forth above, to learn at his "gifted" level via different activities in and out of the classroom. Moreover, during the GIEP meetings, attended by the parents, teachers, principal and other·experts, everyone agreed that the GIEP was appropriate. The parents, who attended the meetings and signed the GIEPs, cannot now argue that the goals, objectives and measuring tools set forth in those GIEPs were insufficient because their son was not learning enough when they agreed to those goals, objectives and measuring tools.

Accordingly, because the School District met the requirements set forth at 22 Pa.

the previous approval of the recommended assignment.

22 Pa.Code § 16.63(a) provides: "Parents may request in writing an impartial due process hearing concerning the identification, evaluation or educational placement of, or the provision of a gifted education to, a student who is gifted or who is thought to be gifted if the parents disagree with the school district's identification, evaluation or placement of, or

the provision of a gifted education to the student. Unless the school district and the parent of the child agree otherwise, the child involved in the hearing shall remain in the child's current educational placement pending the outcome of the hearing." The last GIEP was dated October 27, 2009. The parents filed their petition for review on November 25, 2009.

Code § 16.32(d)(5), we reverse the decision of the Hearing Officer.

## ORDER

AND NOW, this *8th* day of *October*, 2010, the order of the Hearing Officer dated January 6, 2010, is reversed.