IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downingtown Area School District, :
                       Petitioner :
                                  :
        v.                        : No. 1485 C.D. 2016
                                  : Submitted: February 10, 2017
K.D., individually and as parent and :
natural guardian of I.D.,         :
                      Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: March 6, 2017


        Downingtown Area School District (School District) petitions for review from the order of the Special Education Hearing Officer (Hearing Officer) for the Pennsylvania Department of Education (Department), Office of Dispute Resolution, finding the gifted math program and placement offered by the School District to I.D. (Student) for the 2016-17 school year is not appropriate.


**I.**

        The facts of this case as found by the Hearing Officer are as follows. Student is currently enrolled in the fifth grade at Lionville Elementary (Lionville). Student is both a "gifted student" as defined at 22 Pa. Code § 16.1, and a "child

with a disability" as defined at 20 U.S.C. § 1401(3).  Student received an initial Gifted Individualized Education Plan (GIEP)[1] on June 7, 2013.  During the 2013-2014 school year, Student was enrolled in the second grade at Lionville and his "gifted Math programming was delivered as enrichment through a combination of one-on-one (1:1) instruction, independent worksheets, and computer-based instruction."  (Hearing Officer's Finding of Fact (Finding) 9.)  "During independent gifted Math enrichment, [] Student would seek out peers to socialize with," and would "use the computer to play math games instead of advancing math enrichment."  (Hearing Officer's Finding 10.)

These issues with Student's gifted math programming as well as Student's overall needs prompted the School District and K.D., Student's parent (Parent), to revise Student's GIEP.  This was accomplished on December 5, 2014, during Student's third grade year.  The GIEP team, including the School District and Parent, agreed to move Student into the fourth grade math in a regular education fourth grade math classroom at Lionville.

At the time Student's GIEP was revised, a special education evaluation to determine Student's eligibility under the Individuals with Disabilities Education Act (IDEA)[2] was pending.  The School District completed its special education evaluation of Student and provided an Evaluation Report (ER) on

_____

[1] "A GIEP is a written plan describing the education to be provided to a gifted student. The initial GIEP must be based on and be responsive to the results of the evaluation and be developed and implemented in accordance with this chapter."  22 Pa. Code § 16.31(a).

[2] 20 U.S.C. §§ 1401-1487.

2

January 23, 2015, determining that Student was a child with disabilities, specifically attention deficit hyperactivity disorder (ADHD), occupational therapy and speech/language impairment. The ER provided information about Student's giftedness as well and was used to draft an Individualized Education Program (IEP) for Student offered on February 27, 2015. The IEP included gifted programming[3] and called for grade-level acceleration in math in a regular education classroom, consistent with Student's revised GIEP.

During the 2015-2016 school year, Student was enrolled in the fourth grade at Lionville. Under his February 2015 IEP, he took fifth grade math in a regular education fifth grade math classroom. Student received a new IEP on February 22, 2016. He was doing well in fifth grade math at the time and his gifted math programming was not changed.

Throughout the 2015-2016 school year, Parent and the School District participated in several conversations pertaining to Student's potential math programming for the following school year. Logistically, there was an issue as Lionville only houses kindergarten through fifth grade, and Student would require sixth grade level math. All sixth grade students within the School District attend one school building that only houses sixth grade (Sixth Grade Center) and is located a short drive from Lionville. On May 18, 2016, the School District offered a Notice of Recommended Educational Placement (NOREP) proposing that for the

---

[3] For students who are both gifted and eligible for special education, a single IEP is developed and implemented to provide for students' gifted and special education needs. 22 Pa. Code § 16.7.

3

2016-2017 year, Student receive "6th grade Math instruction with online enrichment delivered in [Lionville] Elementary School." (Hearing Officer's Finding 17.) The computer math program the School District purchased for gifted students is called Pearson.

Parent rejected the NOREP and requested a due process hearing, demanding Student receive sixth grade math provided in a regular math classroom in the Sixth Grade Center. In the due process complaint, Parent states that the School District should be required to transport Student from the Sixth Grade Center back to Lionville after his math class and that Parent is willing to waive Student's right to instructional time missed due to travel. Parent argues that this is a transportation issue only and that the School District is refusing to allow Student to attend sixth grade math at the Sixth Grade Center for financial and convenience reasons. Parent further argues that Student's needs as outlined in his February 22, 2016 IEP cannot be met through the School District's proposal because Student is also a child with disabilities who learns through social interaction and does not do well with online instruction, as evidenced during his third grade year. Further, the Pearson computer program does not align with the School District's sixth grade math curriculum and does not allow for collaboration with peers and teachers.

**II.**

Before the Hearing Officer, Student testified that during third grade prior to being advanced a year in math, he was taught math through a combination of classroom, one-on-one and independent online instruction. With respect to independent instruction in math, Student did not like that he could not talk to his

4

friends or check with them if he had a wrong answer, he was sometimes bored with the online content, and on several occasions, he asked to join the regular classroom group. Once he was advanced a year in math, Student made new friends and liked being in class with other students. If he had a choice between taking sixth grade math at the Sixth Grade Center or learning math online, Student would choose to go to the Sixth Grade Center. Student stated that he did not know if he would get bored doing math on the computer if it was at the appropriate level, sixth grade math.

Parent testified that while Student was in third grade prior to being advanced a year in math, he was receiving two pull-out sessions every six-day cycle to try to meet his needs. Student was also able to participate in the School District's online program, Study Island, to receive math enrichment. Parent testified that Student learns best when he is with his peers rather than through online or one-on-one instruction, and that he has difficulty with social skills. She also testified that in the online Study Island program, Student played games and completed modules he had already mastered and were not at the appropriate grade level. Parent expressed concern that Student's needs were not being met regarding his math program and, thereafter, Student's GIEP was revised and he was advanced to fourth grade math. Parent testified that Student performed well taking advanced math in a regular education classroom – he liked being with his peers, he was accepted by others, and he performed well, scoring between 90 and 101 percent, with extra credit. However, Parent admitted that during Student's third grade year, he missed science and social studies classes in order to attend fourth grade math. Student's teachers recorded his missed lessons and he would sit in the

5

back of the classroom and watch the recorded lessons on an iPad while the rest of the class had reading intervention. The same occurred during Student's fourth grade year, except he watched the missed science and social studies lessons during fourth grade math.

Parent testified that the School District proposed several options for the 2016-2017 school year, Student's fifth grade year, including Student remaining at Lionville and taking the Pearson computer-based sixth grade math program.[4] Parent disagreed with the Pearson program option because she did not want Student online by himself and needed to be with peers. Student previously had difficulty with Rosetta Stone, a computer program the School District utilized for foreign language, as well as Study Island. Parent also objected because Pearson is a pre-packaged national program made to fit every state's needs. Parent testified that while Pearson may meet the Commonwealth's basic standards, Student would

---

[4] The other options proposed by the School District included Student remaining in fifth grade math and taking enrichment; switching elementary schools so that he could be in a building next to the Sixth Grade Center and taking sixth grade math at the Sixth Grade Center; skipping fifth grade completely; or remaining at his current elementary school and taking sixth grade math at the Sixth Grade Center if Parent provided transportation and waived Student's right to missed instructional time caused by travel between the schools. Regarding transportation, Parent testified that according to MapQuest, Student's current elementary school was 3.2 miles from the Sixth Grade Center. Parent disagreed with the option of Student changing elementary schools because he has problems with transition, he had been at his elementary school for four years, and he would have to learn the routines and rules of a new school and make new friends.

not be receiving the same curriculum as his peers in the general education classroom at the Sixth Grade Center.[5]

Shelda Perry, principal of Lionville (Principal), testified that Study Island is a computer-based learning program that all Lionville students in second through fifth grade participate in. During Student's third grade year, there was an issue with many students throughout the school utilizing the program's game mode rather than completing modules, and they immediately worked to fix this issue.

Principal testified that Student has made progress in his peer relations. During the 2015-2016 school year, Principal did not see Student for any peer disagreements or any kind of conflicts, and every meeting she attended that year regarding Student was very positive. Principal admitted there was no sixth grade regular education math class at Lionville.

The area of concern Principal has consistently had with Student is how he does with transitions, stating "[w]hen we can reduce the amount of transitions, he really does thrive." (July 20, 2016 Hearing Transcript at 150.) Considering the options for the 2016-2017 school year, Principal believes the best thing for Student and the option that would reduce the amount of transitions the most would be for Student to remain at Lionville for his whole day and take the Pearson online sixth grade math program. Principal also believes Pearson is the

_____

[5] Parent also testified that according to each school's schedule, fifth grade math class at Lionville was allotted 75 minutes and sixth grade math class at the Sixth Grade Center was allotted 48 minutes.

appropriate option for Student because he will be able to move at his own pace, will not have to compromise in any other parts of his educational day, and will not have to make up lessons in other subjects.

Deborah Alberici (Ms. Alberici), the gifted support teacher at Lionville, testified that during third grade before he was accelerated in math, Student was in her classroom for gifted enrichment activities with other students that built on the skills they previously learned in the regular education classroom. Student also had one-on-one instruction with Ms. Alberici, independent assignments, and enrichment materials he would sometimes complete in his regular third grade math classroom. Ms. Alberici testified that Student did well when he was accelerated into both fourth and fifth grade math, and he did not have any social problems or problems with other students while in her classroom. When asked if anything had changed with Student that would make her think being in sixth grade math in a regular education classroom for the 2016-2017 school year would not be appropriate, Ms. Alberici testified:

> Between knowing [Student] from a 3rd grader to a 4th grader, yes, he's made some great strides in all aspects, academically, emotionally, and socially. The support system that we have in place for him at Lionville Elementary seems to be a great fit for him, and having his math instruction delivered online would allow us to continue [Student] with successful behavior within our building. He has a lot of services that are currently being offered to him, and without disrupting those services, we should be able to keep him at our school as an appropriate fit for math.

(July 20, 2016 Hearing Transcript at 172-73.)

8

Carrie Dickmann (Ms. Dickmann), Supervisor of Special Education, testified that the School District was recently placed into corrective action by the Department for several deficiencies, including placing students in a program rather than providing individualized gifted services. Because of this, Ms. Dickmann was working on moving the School District away from just accelerating students beyond their building and instead providing services that meet students' individual needs in the least restrictive way.

Ms. Dickmann testified that the School District looked at providing an online option for gifted services because they could bring instruction to students where they already were, cutting down on transitions and lost instructional time for students. Pearson was selected as the online provider because of the depth and breadth of its offerings and the School District had seen the results it expected and wanted. The School District did not recommend the option of Student taking sixth grade math at the Sixth Grade Center with Parent transporting because of the loss of instructional time this would entail for Student.

Ms. Dickmann testified that Parent was not happy with any of the options the School District proposed for the 2016-2017 school year. Instead, Parent wanted to bring Student to the Sixth Grade Center every morning and have the School District transport him back to Lionville after his math class. Again, the School District was not comfortable with this option due to the loss of instructional time it would entail. Ms. Dickmann testified that the entire team, except Parent, agreed that Pearson was the best option for Student and would meet his gifted needs best. Nothing in the Pearson program would inhibit his success as the

9

program was individualized, self-pacing, and Student would be able to take sensory breaks when needed. Through Pearson, Student would be provided with his individually necessary sixth grade gap filling and then could advance to the accelerated Pre-Algebra course. As such, Pearson delivered the same curriculum provided to students in the Sixth Grade Center's accelerated sixth grade math class, just through a different methodology – online versus in a brick-and-mortar facility. Ms. Dickmann also testified that the Pearson program would have some collaboration among students through Skype as well as through group projects. There would also be a teacher in the room with Student while he was on the computer.[6]

The Hearing Officer[7] determined that Parent met her burden of proving that the School District's proposed gifted math program was inappropriate. Since the third grade, Student has received accelerated math in a regular education classroom, meaning that he received fourth grade math in third grade and fifth

---

[6] The parties stipulated that Student completed fifth grade math and that he requires math at a higher level than fifth grade for the 2016-2017 school year.

[7] During the hearing and in her closing brief, Parent argued that because Student is a twice exceptional child in that he is gifted with disabilities, Student's special education needs are a factor in this case and that analysis should proceed under the IDEA and Chapter 14 of Title 22 of the Pennsylvania Code dealing with Special Education Services and Programs, 22 Pa. Code §§ 14.101-14.163. The Hearing Officer determined that Parent's due process complaint only presents issues arising under Chapter 16 regarding the provision of gifted services to Student. There is no claim that the proposed program or the location in which the program will be delivered infringes upon Student's rights under the IDEA or its implementing regulations. Therefore, the Hearing Officer decided the appropriateness of the School District's proposed gifted math program pursuant to Chapter 16 and not the IDEA or Chapter 14. This issue has not been challenged on appeal.

grade math in fourth grade. Both parties agree that these placements were appropriate for Student and that he performed well. Moreover, both parties agree that these placements were a beneficial change from the less effective one-on-one instruction and independent work that was provided to Student at the beginning of the third grade.

The Hearing Officer also found the School District's proposal that Student participate in the online Pearson math program represents a significant departure from the type of program that everyone agrees has been appropriate, and there is no evidence that the change is necessary to meet Student's individual gifted needs. The Hearing Officer stated, "[w]hen gifted education is working, a school may not substantively alter a student's GIEP (or the gifted portions of an IEP) without first evaluating the Student's needs in conformity with Chapter 16." (July 20, 2016 Decision at 12.) Therefore, the Hearing Officer held that the School District's proposed gifted program was not appropriate and that appropriate gifted math programming for Student must include placement above grade level in a regular education classroom for that grade level.

However, the Hearing Officer also found that Parent has not proven that the only way to place Student in sixth grade math in a regular education sixth grade math classroom is to transport him to and from the Sixth Grade Center. The Hearing Officer ordered that the "[School] District may exercise its discretion regarding the physical location of the 6th grade math classroom that the Student

will attend during the 2016-2017 school year in accordance with this Order." (*Id.* at 13.) This appeal by School District followed.[8]

### III.

### A.

The School District first contends that a portion of Finding 17 is not supported by the administrative record. Finding 17 states that in the NOREP, the School District proposed Student receive "6th grade Math instruction with online enrichment delivered in the [Lionville] Elementary School" for the 2016-2017 school year. (Hearing Officer's Finding 17.) However, what the NOREP, in fact, proposes is that Student:

> receive 6th grade advanced math instruction in a blended learning environment at Lionville Elementary School utilizing the online platform of Pearson's Gifted and Talented Math grade 6 (Pre-Algebra) A&B, along with compacted 6th grade math instruction provided by a Lionville Elementary teacher. Enrichment of the online material will be provided by the gifted support teacher when [Student] demonstrates a need to work beyond the curriculum.

(July 20, 2016 Hearing, School District Exhibit S-11 at 2.) The School District's NOREP and witness testimony makes clear that Student will receive sixth grade advanced math instruction during his upcoming fifth grade year, and that these

---

[8] Our scope of review is limited to determining whether constitutional rights have been violated, whether a legal error has been committed, or whether necessary findings of fact are supported by substantial evidence. *Abington School District v. B.G.*, 6 A.3d 624, 630 n.5 (Pa. Cmwlth. 2010).

services would be delivered through the Pearson online program and in-person instruction from a teacher. Finding 17 then is inaccurate to the extent that it does not recognize that Student would receive in-person instruction from a teacher or that he would receive accelerated math in addition to enrichment. However, the incompleteness of Finding 17 does not undercut the Hearing Officer's finding that Student would be better served receiving math instruction in a regular sixth grade classroom.

**B.**

The School District also contends that the Hearing Officer erred in finding that there was a change in placement necessitating a reevaluation. It argues that Student's placement remains the same as it has always been – accelerated math class one grade level above, to provide instruction at Student's ability level – and the only thing that changed is the modality of instruction. The School District argues that a reevaluation is not necessary and that the Hearing Officer erred in finding that its NOREP was inappropriate.

First, we agree with the Hearing Officer's determination that the School District's proposed math placement outlined in the NOREP constitutes a change in placement because under the pertinent regulations, a change in placement occurs when a gifted student's instructional environment, methods and manner of instruction changes. The regulation provides:

> Revisions to GIEPs, changes in educational placement, or continuation of educational placement for a student determined to be a gifted student shall be made by the GIEP team based upon a review of the student's GIEP

13

and instructional activities, present levels of educational performance, as well as on information in the most recent evaluation.

22 Pa. Code §16.32(a). In addition:

> (a) Gifted students shall be reevaluated before a change in educational placement is recommended for the student. In addition, gifted students may be reevaluated at any time under recommendation by the GIEP team.
>
> . . .
>
> (c) Reevaluations must include a review of the student's GIEP, a determination of which instructional activities have been successful, and recommendations for the revision of the GIEP.

22 Pa. Code § 16.23.

In this case, Student was required to be reevaluated before the School District recommended a change in his gifted math educational placement for the 2016-2017 school year because a change from classroom-based instruction to primarily computer-based instruction is a change in instructional activities.

Second, we also agree with the Hearing Officer that the School District's NOREP, under which Student would receive his instruction through a computer-based program and some in-person instruction, was not appropriate. Gifted education is defined as specially-designed instruction that is, *inter alia*, "[i]ndividualized to meet the educational needs of the [gifted] student" and "[r]easonably calculated to yield meaningful educational benefit and student

14

progress." 22 Pa. Code § 16.1. The term "specially-designed instruction" is further defined as "[a]daptations or modifications to the general curriculum, instruction, *instructional environments, methods*, materials or a specialized curriculum for students who are gifted." *Id.* (emphasis added). A gifted student's educational placement must:

> (1) Enable the provision of appropriate specially designed instruction based on the student's need and ability.
>
> (2) Ensure that the student is able to benefit meaningfully from the rate, level and *manner of instruction*.
>
> (3) Provide opportunities to participate in acceleration or enrichment, or both, as appropriate for the student's needs. These opportunities must go beyond the program that the student would receive as part of a general education.

22 Pa. Code § 16.41 (emphasis added).

These regulations require a placement be tailored to a student's individual gifted needs, including the instructional environment, methods and manner of instruction, *see* 22 Pa. Code §§ 16.1, 16.41, not just that the student receive special instruction in *any* form. In carrying out this mandate, a school district is required to provide an education sufficient to confer an educational benefit upon the student and it must be "tailored to the child's unique needs. . . ." *Daniel G. v. Delaware Valley School District*, 813 A.2d 36, 42 (Pa. Cmwlth. 2002).

15

In this case, the Hearing Officer found the School District's NOREP proposal that Student's instruction be in a classroom apart from the Sixth Grade Center, apart from regular education students, and conducted via the Pearson computer program as well as some in-person instruction from a teacher, was not tailored to Student's needs. This conclusion was based on the Hearing Officer's finding that Student experienced difficulty with the computer programs he previously used in math (Study Island) and foreign language (Rosetta Stone). Student, Parent and Ms. Alberici all testified that during independent work and computer-based instruction in third grade, Student sought out other peers, played games, and on several occasions, asked to be part of the regular education classroom.[9] Witnesses also testified that because Student's gifted needs were not being met through the services he was receiving at that time, including one-on-one instruction, independent work and the computer program Study Island, Student was placed in fourth grade math in the regular education classroom. All of the witnesses agreed that Student performed well once he was accelerated into fourth grade math in a regular education fourth grade classroom, and that his success continued following a similar accelerated placement for fifth grade math. All of

_____

[9] The School District argues that there is not substantial evidence in the record to support the Hearing Officer's Finding 10, which states, "During independent gifted Math enrichment, the Student would seek out peers to socialize with. Student would also use the computer to play math games instead of advancing math enrichment. This problem, and the Student's overall needs, prompted both the Parent and District to review the Student's GIEP." (Hearing Officer Finding 10.) However, the School District does not dispute the fact that Student sought out peers to socialize with or that he played games on the Study Island computer program rather than advancing his math skills. Instead, the School District argues that these behaviors occurred in the regular education classroom. Moreover, the record does not support the School District's contention as to when and where Student's uncontroverted behavior occurred.

this supports the Hearing Officer's conclusion that to meet Student's unique needs, he needs to receive instruction in a regular classroom.

Finally, the School District contends that the proposed math placement outlined in the NOREP satisfies the Hearing Officer's determination that instruction occur in a regular education sixth grade classroom. However, Principal testified Student would not receive math lessons in a classroom with his peers but in a separate classroom through a computer program, and she also admitted that there was no sixth grade regular education math class at Lionville. Receiving math lessons in a separate room via one-on-one, independent and computer-based learning can hardly be said to qualify as a "regular education classroom."

Accordingly, for the foregoing reasons, the decision of the Hearing Officer is affirmed.

DAN PELLEGRINI, Senior Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Downingtown Area School District,       :
                         Petitioner     :
                                        :
            v.                          : No. 1485 C.D. 2016
                                        :
K.D., individually and as parent and    :
natural guardian of I.D.,               :
                         Respondent     :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>March</u>, 2017, the decision of the Special Education Hearing Officer in the above-captioned matter is affirmed.

_____
DAN PELLEGRINI, Senior Judge